### INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, Plaintiff,

v.

### TRANS WORLD AIRLINES, INC., Defendant.

### Civ. A. No. 87–0403.

United States District Court, District of Columbia.

Feb. 20, 1987.

---

Joseph Guerrieri, Jr., John A. Edmond, Guerrieri & Sweeney, Washington, D.C., for plaintiff.

Elliot H. Shaller, Dow, Lohnes and Albertson, Washington, D.C. (Herbert J. Levine, Eugene R. Scheiman, Richard Kelly, Andrew Himmel, Baer Marks and Upham, of counsel), New York City, for defendant.

## ORDER

OBERDORFER, District Judge.

This case is before the Court on the International Association of Machinists' ("IAM") application for a temporary restraining order. For the reasons discussed below, this motion will be denied.

Plaintiff is the certified collective bargaining representative for several classes or crafts of Trans World Airline ("TWA") employees. Most, but not all of these employees are covered under a collective bargaining agreement that is effective from January 3, 1986 to January 3, 1989.[1] Starting in early January, 1987, TWA sent to the IAM, and to other labor organizations representing its employees, copies of a letter announcing TWA's Drug and Alcohol Policy, a TWA Policy Statement, and an explanation of TWA's reasons for drafting the Policy Statement. This Policy State-

---

1. The IAM has been certified as the representative of TWA's passenger service employees. However, no collective bargaining agreement has been negotiated with respect to these employees. See *IAM v. TWA,* 654 F.Supp. 447 (1987).

2. The IAM also seeks to enjoin TWA from requiring employees to sign an "Alcohol and Drug Consent Form" which purports to hold TWA

ment and a cover letter dated February 15, 1987, were mailed to all TWA employees on February 11, 1987. The Policy Statement explicitly prohibits the on or off duty use of unlawful drugs, working under the influence of drugs or alcohol or the possession of drugs or alcohol on the premises and provides that employees who engage in these activities will be subject to discharge. In addition, the Policy Statement provides that drug testing may be conducted upon "reasonable suspicion" that the employee is under the influence, or is impaired by, alcohol or drugs. Reasonable suspicion exists when a supervisory employee can document abnormal appearance, behavior, speech or body odors of an employee. The Policy Statement further provides that a confirmed positive result shall be grounds for discharge and that refusal to submit to a request for testing shall constitute insubordination and shall be grounds for discharge.

The IAM submits that TWA's drug testing policy constitutes a unilateral change in the existing collective bargaining agreement in violation of the Railway Labor Act, 45 U.S.C. § 152 and 156,[2] and urges this Court to enter an order enjoining the implementation of this program pending TWA's compliance with the mandatory "major" dispute resolution procedures of the Act. The IAM notes that on September 26, 1975, it served a Section 6 notice which proposed, among other things, the establishment of a drug and alcohol program. Such a program, entitled Special Health Services, was established on August 26, 1976 to provide treatment for employees with drug and alcohol problems. According to the IAM, the establishment of this program demonstrates that the issues addressed in TWA's policy statement have previously been the subject of collective bargaining. Moreover,

harmless from any liability resulting from urinalysis and blood alcohol tests. However, TWA has now represented to the Court that it has dropped this waiver requirement. *See* Defendant's Memorandum in Opposition to Plaintiff's Motion for a Temporary Restraining Order at 1. IAM's claim for injunctive relief with respect to this aspect of TWA's drug policy is therefore moot.

according to the union, the policy statement constitutes a significant change in the actual, objective working conditions of TWA's employees; the IAM therefore argues that this case involves a "major dispute" and that this court is entitled to issue an injunction without any showing of irreparable harm.

The IAM Section 6 Notice and the establishment of the Special Health Services program provides some evidence that the TWA Policy Statement constitutes a unilateral change in an area that both parties have recognized as appropriate for bargaining. However, there is also persuasive evidence that the Policy Statement was merely a refinement in the enforcement by TWA of its existing rules. It is undisputed that TWA's Management Policy and Procedure Manual dated January 3, 1983 provides that

> (3) Reporting for work under the influence of liquor or drugs or the unauthorized introduction, possession or use of liquor or drugs on company premises is prohibited.

TWA represents that it has continuously disciplined employees for violation of this rule by using "objective observations" of employees who appeared to be under the influence of drugs or alcohol. In addition, according to TWA,

> [I]n some instances the employee was requested to take a test to establish whether in fact he was working under the influence of drugs or alcohol. If he passed the test he would be exonerated. If he declined to take the test it was determined that he failed to rebut the prima facie case of working under the influence of alcohol or drugs and he was subject to discipline up to and including discharge pursuant to the procedures of the collective bargaining agreement.

Defendant's Memorandum in Opposition to Plaintiff's Motion for a Temporary Restraining Order at 4. TWA therefore argues that its testing policy is merely a refinement of the techniques used in the past when specific employees were subject to suspicion about drug or alcohol abuse.[3]

The new provisions with respect to off duty use are troubling. It may well be that to pass muster, these provisions will have to be interpreted narrowly to provide only that evidence of off duty use could supply "reasonable suspicion" for testing to determine if employees are under the influence of drugs or alcohol while on duty in violation of Rule 3. However, it is established in this circuit that a controversy may not be termed a "major" dispute unless the claimed contractual justification is "obviously insubstantial." *Southern Ry. Co. v. Brotherhood of Locomotive Firemen & Enginemen*, 384 F.2d 323, 327 (D.C.Cir. 1967). The demonstration made so far by the plaintiff fails to establish that there is a substantial likelihood that the IAM will prevail on its claim that this dispute is a "major" dispute rather than a minor dispute over the interpretation of an existing collective bargaining agreement. *See Brotherhood of Maintenance of Way Employees v. Burlington Northern R.R. Co.*, 802 F.2d 1016 (8th Cir.1986). For example, the IAM has failed to carry its heavy burden, at this TRO stage of these proceedings, of showing that it is likely to establish that off duty use is not probative of a violation of Rule 3.

Moreover, pending final resolution of this case, arbitration remains available for individual employees who have been disciplined on the basis of drug or alcohol use. These employees should be entitled to argue before the arbitrator that TWA acted unlawfully in promulgating its Policy Statement. Accordingly, and in reliance upon defendant's representation that it has withdrawn the "waiver" requirement, it is this 20th day of February, 1987, hereby

ORDERED: that the plaintiff's motion for a temporary restraining order should be, and is hereby, DENIED; and it is further

---

**3.** At oral argument, TWA represented that it was not instituting a random drug testing program. During further proceedings in this case, the union may seek to demonstrate that the policy has in fact been implemented without individualized findings of reasonable suspicion. *Cf. Jones v. McKenzie*, 628 F.Supp. 1500 (D.D.C.1986).

ORDERED: that there shall be a status call in this action on February 27, 1987 at 9:30 A.M. for the purpose of scheduling further proceedings.