**AIRLINE PILOTS ASSOCIATION INTERNATIONAL, Plaintiff,**

v.

**ALASKA AIRLINES, INC., Defendants.**

No. C87–353R.

United States District Court,
W.D. Washington.

Aug. 11, 1987.

Jon Howard Rosen, Frank and Rosen, Seattle, Wash., for plaintiff.

John F. Aslin, Philip S. Morse, Perkins Coie, Seattle, Wash., for defendants.

**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND GRANTING JUDGMENT FOR DEFENDANT**

ROTHSTEIN, Chief Judge.

THIS MATTER comes before the court on a motion by plaintiff Air Line Pilots Association, International, for preliminary injunction. Having reviewed the motion, together with all documents filed in support and in opposition, and being fully advised, the court finds and rules as follows:

## I. FACTUAL BACKGROUND

This case involves a challenge to rules issued by defendant Alaska Airlines, Inc. ("AA"), requiring all employees, including those represented by plaintiff Air Line Pilots Association, International ("ALPA"), to comply with a drug and alcohol testing program. Among other things, the program provides that all applicants for employment and all employees returning to work after an absence of more than sixty days must submit to a drug screen.

In addition, a drug screen or alcohol testing can be required "[w]hen an employee's job performance or behavior while on or off the job provides a reasonable basis to believe that the employee has a chemical dependency or abuse problem." AA System Regulations Section 2.450, p. 5. Thus, according to the new rules, a supervisor who suspects that an employee may be under the influence of drugs or alcohol must promptly remove the employee from service and arrange for testing. The employee cannot return to work until the results of the tests become available. If the results are negative, the employee is fully compensated for the time out of service. Any employee who tests positive on a drug screen and later returns to work under the new rules is thereafter subject to mandatory drug testing without prior notice.

When the rules were proposed in November of 1986, ALPA, as collective bargaining representative for AA pilots, requested that AA bargain with ALPA concerning the program. But AA refused and the new regulations became effective on December 8, 1986.

ALPA then filed a complaint in this court alleging that AA's unilateral promulgation of the new drug and alcohol policy is a violation of its collective bargaining obligation. ALPA now moves for a preliminary injunction barring AA from enforcing the new rules until the bargaining rights and obligations of the parties have been determined. AA responds that it has no duty to bargain concerning the rules, that an arbitration proceeding is the proper forum for the parties to discuss their differences, and that the court should deny ALPA's request for interim injunctive relief.

## II. LEGAL ARGUMENT

The relationship between AA and ALPA is governed by the terms of the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.* Labor disputes under the RLA are divided into "major disputes," which involve the formation or alteration of collective bargaining agreements, and "minor disputes," which concern grievances arising out of an agreement or questions of contractual interpretation and which must be settled pursuant to the RLA's mandatory arbitration procedures. *Elgin J. & E. Ry. v. Burley,* 325 U.S. 711, 723, 65 S.Ct. 1282, 1289–90, 89 L.Ed. 1886 (1944); *O'Donnell v. Wien Air Alaska,* 551 F.2d 1141, 1146–47 (9th Cir.1977).

ALPA contends that the controversy over the new drug and alcohol testing program is a "major dispute," and that AA is thus required to bargain with ALPA about the proposed changes. *See* 45 U.S.C. § 152 of the RLA, which specifically forbids an employer to alter the working conditions of employees as embodied in collective bargaining agreements unless the provisions of § 156 regarding bargaining to change the terms of agreements are followed. ALPA further contends that AA should be enjoined from enforcing the new policy pending its compliance with § 156. Even if the dispute is characterized as "minor," ALPA asks the court to enjoin AA's enforcement of the program pending mandatory arbitration of ALPA's grievance cover-

ing the matter.[1] AA counters that the dispute is "minor" in nature and that ALPA is not entitled to an injunction because it has not satisfied the prerequisite of showing irreparable injury or that the balance of hardships tips in its favor.

In order to determine whether this dispute is major or minor, the court must decide whether AA's enforcement of the new policy is "expressly and arguably predicated on the terms of the [existing] agreement [between AA and ALPA], as illuminated by long-standing practices." *Id.* at 1147 (quoting *Switchmen's Union v. Southern Pacific Co.,* 398 F.2d 443, 447 (9th Cir.1968). If so, the dispute is minor, and the court must then determine whether injunctive relief is appropriate. If not, the dispute is major and ALPA is entitled to have AA enjoined from enforcing the new policy until AA has fulfilled its bargaining obligation under the RLA.

AA argues that, since the mid–1970's, its internal rules have specifically banned any use of drugs by pilots as well as the consumption of alcohol on or prior to duty. Since at least 1947, the collective bargaining agreement has also allowed AA to require a pilot to undergo medical examinations at AA's expense. Section 23.C. of the agreement states as follows:

C. Should the Company [AA] require a pilot to be examined, in addition to the prescribed FAA physical examinations, said examination shall be considered a Company physical examination and shall be at Company expense. The Company shall indicate to the pilot the reason(s) for the physical examination....

AA contends that this language places no restrictions on these examinations, thus leaving AA complete discretion to determine when, how and why they shall take place.

ALPA responds that, far from arguably supporting AA's unilateral imposition of a new drug and alcohol testing program, the language of the collective bargaining agreement explicitly requires AA to bargain with ALPA concerning the proposed

---

1. Without conceding that the dispute is in fact minor, ALPA has taken the precaution of filing a grievance about the new policy. Affidavit of Dale Caley, Exhibit 1.

change. ALPA first contests AA's argument that it has unrestricted discretion to require a pilot to complete a medical examination by pointing to Section 23.A., which provides that "[t]he physical standards required of a pilot shall be the standards established and administered by the Federal Aviation Agency, including its waiver and exemption policy." ALPA stresses that the Federal Aviation Agency ("FAA") regulations governing the standards for medical certification of pilots do not contain any provisions concerning testing for use of drugs or alcohol. 14 C.F.R. § 67.1 *et seq.* They only provide that, in order to receive a first-class medical certificate, an applicant must have no established medical history or clinical diagnosis of alcoholism or drug dependence.[2] *Id.* at § 67.13(d)(i)–(c) and (d).

As further proof that the Federal Aviation Agency has not yet promulgated standards concerning testing for drug and alcohol use, ALPA asserts that in December of 1986, the FAA published an advance notice of proposed rulemaking concerning control of drug and alcohol use for personnel engaged in commercial and general aviation activities. 51 Fed.Reg. 44432; 52 Fed.Reg. 2547.

After pointing out the gaps in the existing FAA regulations, ALPA cites Section 23.B.2. of the collective bargaining agreement, which states:

2. In the event of change by the Federal Government in the method of medical certification or standards, [ALPA] may, notwithstanding the provisions of Section 31, "Duration" give thirty (30) days written notice pursuant to Section 6 of the Railway Labor Act, as amended, for the purpose of negotiating with re-

spect to the provisions of this Section 23 of the Agreement.

ALPA contends that it is plain on the face of the agreement that AA's ability to require medical examinations is limited by the scope of existing FAA standards, which do not now provide for mandatory drug and alcohol testing under the circumstances set forth in AA's new policy.

Having carefully reviewed ALPA's arguments, the court finds that it cannot agree with ALPA's conclusion. It is true that existing FAA regulations specifically provide for drug and alcohol testing only under certain narrow conditions. However, it is also clear that the FAA does prohibit crew members from operating aircraft while under the influence of alcohol or while using any drug that affects the person's faculties in any way contrary to safety. 14 C.F.R. § 91.11(a)(1)–(4). The collective bargaining agreement between ALPA and AA, Section 23.A and C, can be read to permit AA to require an examination, including a drug or alcohol test, in order to ascertain whether a pilot is complying with the FAA physical standards prohibiting crew members from acting under the influence of drugs or alcohol. Thus, the court concludes that the issue of testing under those circumstances constitutes a minor dispute.[3]

The court notes that AA rules have since at least 1976 barred the use of narcotics at any time by flight crew members; unsupervised use of narcotics is cause for immediate dismissal. Affidavit of Patrick L. Glenn, Exhibit A. Since at least 1977, AA rules have provided that "intoxication, consumption of alcohol or unauthorized drugs on or prior to duty by any flight crew member" and "use of narcotics or similar

---

2. Alcoholism is defined as "a condition in which a person's intake of alcohol is great enough to damage physical health or personal or social functioning, or when alcohol has become a prerequisite to normal functioning. 14 C.F.R. § 67.13(d)(i)(c). Drug dependence is defined as "a condition in which a person is addicted to or dependent on drugs other than alcohol, tobacco or ordinary caffeine-containing beverages, as evidenced by habitual use or a clear sense of need for the drug." *Id.* § 67.13(d)(i)(d).

3. The court recognizes that, as originally promulgated, the FAA regulations may not have specifically contemplated the use of urinalysis to detect the presence of drugs. However, it is not disputed that pilots have been subjected to routine urine tests for purposes of medical certification for many years. Thus, the method employed, if not the use to which it is now being put, is not novel and arguably falls within the provisions of the collective bargaining agreement.

**1488**

drugs" are major breaches of AA policy which may result in job termination, disciplinary suspension and/or long-term suspension of pass privileges. Affidavit of Dennis J. Hamel, p. 2 and Exhibit A, pp. 2, 4. The rule requiring employees to undergo a drug screen upon returning from an absence of more than sixty days has been in effect since July of 1985. Thus, the court concludes that AA's prohibition of off duty drug use has been to a large extent condoned by past practice, which in turn indicates that the AA's unilateral promulgation of new rules at most constitutes a minor dispute subject to arbitration.

A careful review of the precedent cited by the parties does not alter the court's conclusion that this case involves a minor dispute under the RLA. Unlike several of the cases cited by ALPA, the instant situation does not involve a serious departure from prior practice like random testing or regulation of off duty drug use where no such rule had existed before. *Compare Transport Workers Union v. SEPTA,* No. 87–0389 (E.D.Penn. Feb. 9, 1987); *International Brotherhood of Teamsters v. Southwest Airlines Company,* No. CA–3–86–3103–R (N.D.Tex. Jan. 6, 1987); and *Brotherhood of Maintenance of Way Employees v. Chicago and North Western Transportation Co.,* Civil Case No. 4–86–575 (D.Minn. Oct. 16, 1986).

Under the circumstances of this case, the court finds far more persuasive the reasoning in *Railway Labor Executives' Association v. Norfolk and Western Railway Co.,* 659 F.Supp. 325 (N.D.Ill.1987); and *International Association of Machinists and Aerospace Workers v. Trans World Airlines,* 663 F.Supp. 230 (D.D.C.1987). In both of those cases, it was held that the drug and alcohol testing programs proposed by the employers did not constitute unilateral changes in working conditions, but rather the imposition of rules arguably justified by the existing contract and past practice.

Since only a minor dispute is involved, ALPA and AA must resolve their differences through arbitration. The question remains whether ALPA is entitled to a preliminary injunction pending the completion of the arbitration process. In order to prove such entitlement, ALPA must show "either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and that the balance of hardships tips sharply in its favor." *Zepeda v. United States Immigration and Naturalization Service,* 753 F.2d 719, 727 (9th Cir.1983).

Regarding ALPA's showing on the merits, the court finds that an arbitrator might well conclude that some changes in AA's program as urged by ALPA would be in order. Nevertheless, the court does not find any substantial support for ALPA's position that the program conflicts with the plain language of the collective bargaining agreement. On the issue of irreparable injury to ALPA's members, the court acknowledges the intrusion on their right to privacy and the potential harm to reputation which the pilots might suffer as a result of AA's drug and alcohol testing program.[4] But the court concludes that these possibilities do not constitute a sufficiently serious threat of hardship to outweigh the potential hardship to AA if it is enjoined from implementing its new policy and thereby handicapped in its attempt to ensure that flight crew members are not under the influence of drugs or alcohol.

For the reasons stated above, plaintiff ALPA's motion for preliminary injunction is DENIED. Given that no other issues remain to be resolved in the case, the court also grants judgment for defendant AA.

IT IS SO ORDERED.

The Clerk of the Court is directed to send copies of this Order to counsel of record.

---

**4.** On the other hand, AA assures the court that the results of any tests performed under the new policy will remain strictly confidential.