**INTERNATIONAL ASSOCIATION OF MACHINISTS & AEROSPACE WORKERS, AFL–CIO, Plaintiff,**

v.

**TRANS WORLD AIRLINES, INC., Defendant.**

**TRANS WORLD AIRLINES, INC., et al., Plaintiffs,**

v.

**NATIONAL MEDIATION BOARD, International Association of Machinists and Aerospace Workers, AFL–CIO, Defendants.**

**Civ. A. Nos. 86–1912, 86–2980.**

United States District Court, District of Columbia.

Feb. 18, 1987.

Joseph Guerrieri, Jr., John A. Edmond, Guerrieri & Sweeney, Washington, D.C., for plaintiff.

Eric Rosenfeld, Ronald A. Lindsay, Seyfarth, Shaw, Fairweather & Geraldson, Washington, D.C., for defendant.

Michael E. Avakian, Washington, D.C., V. Scott Kneese, Dennis Childs, Bracewell & Patterson, Houston, Tex., Robert F. Gore, Springfield, Va., for Deborah K. Boller and Thomas R. Rhoades.

Joseph Guerrieri, Jr., John A. Edmond, Guerrieri & Sweeney, Washington, D.C., Jeffrey P. Manners, Houston, Tex., for International Association of Machinists and Aerospace Workers, AFL–CIO.

Wilma B. Liebman, International Brotherhood of Teamsters, Washington, D.C., for International Brotherhood of Teamsters.

Scott A. Raisher, Jolly, Walsh, Hager & Gordon, Kansas City, Mo., Marvin Peterson, Houston, Tex., for the International Federation of Flight Attendants.

Eric Rosenfeld, Seyfarth, Shaw, Fairweather & Geraldson, New York City, Ronald A. Lindsay, David A. Copus, Washington, D.C., Graham Kerin Blair, Brendan D. Cook, Houston, Tex., for Trans World Airlines, Inc.

## MEMORANDUM

OBERDORFER, District Judge.

These two consolidated cases concern union representation of the passenger service employees of Trans World Airlines, Inc. ("TWA"). In Civil Action No. 86–1912, the International Association of Machinists and Aerospace Workers ("IAM") seeks an order requiring TWA to commence bargaining over the wages, rules, and working conditions of the TWA passenger service employees and enjoining TWA from altering the wages, rules, and working conditions that obtained on May 23, 1986. On that date the National Mediation Board ("NMB") certified the IAM as the bargaining representative for TWA's passenger service employees. In Civil Action No. 86–2960, which was originally filed in the United States District Court for the Southern District of Texas, the plaintiffs, including TWA and several individual passenger service employees, seek to set aside the NMB certification. That suit was transferred to this Court from the Texas Court on August 29, 1986.[1]

### I.

The sole issue in Civil Action No. 86–2980 and a threshhold question in Civil Action No. 86–1912 is whether this Court should vacate the NMB certification of the IAM as the representative of the TWA passenger service employees. The focus of this issue is the NMB decision to exclude from the representation election TWA passenger service employees who were serving as flight attendants at the time of the election while the regular flight attendants participated in a strike called by the Independent Federation of Flight Attendants ("IFFA").

By a telegram dated February 12, 1986, the NMB authorized a mail ballot election of TWA's passenger service employees. Three unions participated in the election, the IAM, the IFFA and the International Brotherhood of Teamsters ("Teamsters"). The NMB mailed its ballots on March 28, 1986, and scheduled the vote count for April 28, 1986. *Trans World Airlines, Inc.*, 13 NMB 210 (1986). On April 22,

---

1. Civil Action No. 86–2960 was originally two separate suits, *Boller v. NMB*, (C.A. No. H–86–2348) and *TWA v. NMB*, (C.A. No. H–86–2350). These cases were consolidated by Judge Gabrielle K. McDonald in her order transferring them to this Court.

1986, the Teamsters requested that the voting period be extended for two weeks unless the Board deleted from the eligibility lists former passenger service employees who were then employed during an IFFA strike as TWA flight attendants. Representatives of all three unions and TWA met with NMB mediator Joseph Anderson on April 25, 1986, to review the list of eligible voters. A further meeting was held on April 28, 1986. On that date, Mediator Anderson determined that employees working as strike replacements for TWA flight attendants were eligible voters in the passenger service employees' representation election. The Teamsters appealed this determination and the ballots were impounded pending the resolution of the appeal. The Board issued its written decision on May 13, 1986, holding that employees who were working as "contingent flight attendants" were ineligible to vote within the craft or class of passenger service employees. *See Trans World Airlines, Inc.*, 13 NMB 210, 216 (1986). A May 14, 1986 motion for reconsideration of this decision filed by TWA was denied by the Board on May 15, 1986. The next day, the Board counted the mail ballots and on May 23, 1986, it announced that a majority of eligible voters had voted for a union and that the IAM had received a majority of the pro-union votes.[2] 13 NMB 237 (1986). Accordingly, the Board certified the IAM as the authorized representative of the passenger service employees. *Id.* at 238.

It has been established for over 20 years that courts have no authority to review NMB certification decisions in the absence of a showing on the face of the pleadings that the certification decision was a gross violation of the Railway Labor Act or that it violated the constitutional rights of an employer, employee or union. *Brotherhood of Ry. and S.S. Clerks v. Association for the Benefit of Non-Contract Employees*, 380 U.S. 650, 658-60, 661-2, 85 S.Ct. 1192, 1196-97, 1198, 14 L.Ed.2d 133 (1965) ("*Railway Clerks*"); *Switchmen's Union of North America v. National Mediation*

*Board*, 320 U.S. 297, 303, 64 S.Ct. 95, 98, 88 L.Ed. 61 (1943) ("*Switchmen's Union*"); *International Association of Machinists and Aerospace Workers v. National Mediation Board*, 425 F.2d 527, 536 (D.C.Cir. 1970); *International Brotherhood of Teamsters v. Brotherhood of Ry. Airline and S.S. Clerks*, 402 F.2d 196, 205 (D.C. Cir.) *cert. denied*, 393 U.S. 848, 89 S.Ct. 135, 21 L.Ed.2d 119 (1968) ("*IBT v. BRAC*").

■ Despite the assiduous efforts of their counsel, plaintiffs have failed to demonstrate either a gross violation of the Act or any violation of the Constitution. Plaintiffs' attempts to characterize this case as one where the NMB has failed to perform its statutory duty to "investigate" a representation dispute are not persuasive. *See* Section 2, Ninth of the Railway Labor Act, 45 U.S.C. § 152, Ninth. For example, TWA purports to find a violation of this statutory obligation to "investigate" in its discovery that some documents which it believes should be in the NMB's file are not there. In addition, the plaintiffs allege that the NMB's determination regarding the contingent flight attendants was erroneous and that the NMB therefore could not have "investigated" the dispute.

There is authority for judicial intervention where the NMB certified a union solely on the basis of signature cards authorizing an election and then refused to investigate the ensuing dispute, *International In-Flight Catering Co. v. National Mediation Board*, 555 F.2d 712, 718 (9th Cir. 1977), and where the NMB refused to investigate an individual's application to represent some fellow employees, *Russell v. National Mediation Board*, 714 F.2d 1332 (5th Cir.1983), *cert. denied*, 467 U.S. 1204, 104 S.Ct. 2385, 81 L.Ed.2d 344 (1984). Here, it is undisputed that NMB investigated the representation dispute among TWA's passenger service employees and conducted a mail ballot election. Moreover, the Board also "investigated" the eli-

---

**2.** Of 4330 eligible employees, 1279 cast votes for the IAM, 935 cast votes for the Teamsters and 36 cast votes for the IFFA. *See* 13 NMB 237, 238 (1986).

gibility dispute and issued a written opinion which was based on NMB precedent. *See Chicago and North Western Ry. Company,* 4 NMB 240 (1965); *Trans World Airways, Inc.,* 8 NMB 663 (1981). TWA can not therefore evade the strictures against judicial review of NMB certification decisions by characterizing its complaint about the substance of the Board's decision as a "failure to investigate" claim.

■ The claims of the individual plaintiffs are no more substantial than those of TWA. These plaintiffs were passenger service employees who responded to TWA's call for volunteers while the permanent flight attendants were on strike and who were still serving as flight attendants when this disputed election occurred. The NMB decision to treat the contingent flight attendants as flight attendants rather than as passenger service employees simply does not inflict injury of a gross or constitutional dimension. Nor is there any merit in these plaintiffs assumption that they would have been ineligible to vote as flight attendants where, as here, the NMB never precluded such participation, and there is no showing that the plaintiffs endeavored to participate in Independent Federation of Flight Attendant affairs. The foregoing disposes of any glimmering claim of plaintiffs that the NMB impaired their First Amendment associational rights. TWA invited the individual plaintiffs to serve as flight attendants and they voluntarily accepted. NMB had no role in the individual plaintiffs serving as flight attendants so

that there is no basis for a contention that NMB has any responsibility for plaintiffs being flight attendants at the time of this election for passenger service employees. Nor did the NMB interfere with plaintiffs' associational rights when it determined that plaintiffs' voting rights followed their voluntary change in jobs.

■ Both TWA and the individual plaintiffs allege that the NMB acted on the basis of an impermissible pro-union bias when it made its decision regarding the contingent flight attendants.[3] It is unclear whether a proven instance of "non-neutrality" would constitute a gross violation of a specific provision of the Railway Labor Act or would be sufficient to transform a disagreement about a Board decision into a constitutional claim. There is no occasion to decide that question, however, because the plaintiffs have failed to proffer any substantial evidence to support this claim. In the absence of such a proffer, they have not demonstrated an error that is "obvious on the face of the papers." *See IBT v. BRAC,* 402 F.2d at 205. Permitting extensive discovery, such as that requested by these plaintiffs,[4] whenever a party alleges a lack of "neutrality" would contradict the Supreme Court's admonition that "the dispute [is] to reach its last terminal point when an administrative finding is made." *Switchmen's Union,* 320 U.S. at 305, 64 S.Ct. at 99. An accompanying order will therefore grant the NMB and IAM motions for summary judgment dismissing the

---

**3.** In particular, TWA alleges that on April 28, 1986, the date the ballots were impounded pending decision on the Teamster's appeal, "it was apparent from the ballot impounding procedure that approximately 2300 ballots had been cast—a number either close to or just shy of the number of ballots necessary for certification of a representative." *See* TWA's Memorandum in Response to NMB's and IAM's Rule 12(b)(6) and Rule 56 Motions for Summary Judgment and NMB's Rule 12(b)(1) Motion to Dismiss at 6. In addition, TWA has alleged that the "NMB and all parties to [the case] were aware that declaring the contingent flight attendants ineligible to vote would reduce the number of potential eligible voters and thereby increase the chances for a Union victory." *See id.* at 6–7. This assertion is difficult to square with the undisputed fact

that two of the unions, the IAM and the IFFA, supported the mediator's determination that the contingent flight attendants were eligible to vote. *See also* Individual Plaintiffs' Response in Opposition to Defendants' Motions to Dismiss or for Summary Judgment at 2.

**4.** On July 14, 1986, TWA served the NMB and the Teamsters with interrogatories and document requests. In addition, the individual plaintiffs noticed the deposition of Mediator Anderson on October 29, 1986. A November 18, 1986 protective order stayed discovery pending resolution of the dispositive motions filed by the NMB and the IAM. That order is mooted by the resolution of these motions.

plaintiffs' challenges to the May 23, 1986 Certification.

## II.

■ In Civil Action No. 86–1912, IAM seeks judicial enforcement of legal rights it claims to have been created in it by virtue of its May 23, 1986 certification. Specifically, IAM seeks an order compelling TWA to "treat" with it as bargaining representative of the TWA service employees as required by section 2, Ninth of the Railway Labor Act, 45 U.S.C. § 152, Ninth, and an injunction against any changes in TWA's working rules for these employees which have been effected by TWA since the May 23 certification.

The IAM claim that TWA should have been treating or negotiating with respect to the service employees is firmly grounded in the governing statute. Paragraph Ninth of 45 U.S.C. § 152 provides without equivocation that

Upon receipt of [a] certification the carrier shall treat with the representative so certified as the representative of the craft or class for the purposes of this chapter.[5]

Despite the clear command of this statute and the clearly expressed congressional intention to limit the role of the judiciary in its administration, TWA has taken the adamant position that it will not negotiate with the IAM, unless and until ordered to do so by a court. An accompanying order will accommodate that demand. While TWA challenged the certification in Texas, it never asked the Texas Court, this Court or any court for leave to delay negotiations. It simply defied the statutory command and

took the law into its own hands. In fact, in a remarkably audacious response to an IAM request to begin negotiations, TWA replied:

In view of the pending proceedings [in Texas] and in order to preserve our full rights to judicial review, it would be inappropriate and, indeed, that (sic) *it may be unlawful,* for TWA to commence bargaining or otherwise deal with the IAM as the representative of the passenger service employees at this time when its representation status is in question. Therefore we intend not to do so until this matter is finally resolved.

Exhibit C to the IAM's Statement of Material Facts as to Which There is no Genuine Dispute at 2 (emphasis added).[6]

While TWA held IAM at bay with its refusal to deal thereby precluding the formation of a collective bargaining agreement with respect to the TWA passenger service employees,[7] it made important unilateral changes in the working conditions of the IAM represented service employees. Specifically, TWA gave flight attendants a role in passenger pre-boarding, a change that, however desirable as an economy or an efficiency, would have been clearly bargainable if a collective bargaining agreement had been in place. TWA's ability to proceed unilaterally was enhanced by the delay in the decision of the Texas Court to transfer the certification case to this Court, and by a frivolous appeal of that transfer order filed by the individual plaintiffs. Under these circumstances, this Court was reluctant to act on IAM's prayer for interlocutory relief while responsibility for the

---

**5.** This refusal to negotiate following certification is not only a clear violation of Section 2, Ninth of the Railway Labor Act; it is also contrary to Section 2, First of the Act which provides, in part, that "[i]t shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions...." 45 U.S.C. § 152, First. Furthermore, there is a strong argument that this conduct is in violation of Section 2, Fourth, which guarantees that "[n]o carrier, its officers or agents, shall deny or in any way question the right of its employees to join, orga-

nize, or assist in organizing the labor organization of their choice, and it shall be unlawful for any carrier to interfere in any way with the organization of its employees...." 45 U.S.C. § 152, Fourth.

**6.** At oral argument, TWA's counsel was unable to supply any authority for this flat contradiction of the language of the statute.

**7.** IAM and TWA have for many years had a collective bargaining agreement with respect to thousands of other TWA employees.

certification case was in limbo. In retrospect, IAM had established its entitlement to an order compelling negotiation as of July 8, 1986, when it applied for a temporary restraining order. Whether this situation can be rectified remains to be seen. It is clear that an order compelling TWA to negotiate with the union in good faith should be entered now. *See Virginian R.R. Co. v. System Fed. No. 40,* 300 U.S. 515, 544–45, 57 S.Ct. 592, 597–98, 81 L.Ed. 789 (1937); *Railway Clerks,* 380 U.S. at 658, 85 S.Ct. at 1196; *Aeronautical Radio, Inc. v. National Mediation Board,* 380 F.2d 624, 627 (D.C.Cir.), *cert. denied,* 389 U.S. 912, 88 S.Ct. 237, 19 L.Ed.2d 259 (1967).

### III.

■ IAM's prayer for a further order re-establishing working conditions as they existed on May 23, 1986, when it was certified poses a more difficult question. Paragraph Seventh of 45 U.S.C. § 152 provides that:

No carrier ... shall change the rates of pay, rules, or working conditions of its employees, as a class as embodied in agreements except in the manner prescribed in such agreements or in section 156....

Section 156 suspends "intended change[s] in agreements affecting rates of pay, rules, or working conditions" during a waiting period and mediation or an opportunity for mediation by the NMB. 45 U.S.C. § 156. In *Williams v. Jacksonville Terminal Co.,* 315 U.S. 386, 400–03, 62 S.Ct. 659, 668–69, 86 L.Ed. 914 (1942), the Supreme Court limited judicial authority to preserve working conditions in *status quo* under section 156 to conditions embodied in pre-existing collective bargaining agreements. The potential scope of the holding in *Williams* was substantially narrowed in the later

case of *Detroit & Toledo Shore Line R.R. Co. v. United Transp. Union,* 396 U.S. 142, 90 S.Ct. 294, 24 L.Ed.2d 325 (1969), in which the Court held that the "status quo extends to those actual objective working conditions out of which the dispute arose" and that "these conditions need not be covered in an existing agreement." *Id.* at 153–54, 90 S.Ct. at 301. The *Detroit & Toledo Shore Line* Court therefore required that an employer comply with the status quo requirements of Section 156 during a dispute over a condition of employment that was not covered in its existing collective bargaining agreement with the union. In reaching this conclusion, the Court noted that "[t]he Act's status quo requirement is central to its design." *Id.* at 150, 90 S.Ct. at 299.

The philosophy of *Detroit & Toledo Shore Line* is clearly at odds with the reasoning in *Williams.* However, the *Detroit & Toledo Shore Line* Court did not "paus[e] to comment upon the present validity" of *Williams* and distinguished that case on the grounds that there was "absolutely no prior history of any collective bargaining or agreement between the parties on any matter." *Id.,* 396 U.S. at 158, 90 S.Ct. at 303. *Williams* therefore precludes the relief sought by IAM with respect to changes in working conditions heretofore effected.

■ The Court has considered whether it is authorized, despite *Williams,* to enjoin *future* changes in the status quo, now that TWA is firmly obligated to commence bargaining with the IAM.[8] In this case, unlike *Williams,*[9] it is established and the Court has found that TWA's failure to commence negotiations on or about May 23, 1986, when the NMB certified the IAM, is a clear violation of the law. If TWA had complied with its statutory obligation to treat with the IAM in a reasonable time after certifi-

---

**8.** It is undisputed that such changes are planned by TWA. For example, TWA has issued a memorandum notifying all personnel that the position of "reservation agent-in-charge" is being eliminated. *See* Exhibit A to the Declaration of Timothy Connally (attached to the IAM's Reply

Memorandum). These employees are within the passenger service craft or class.

**9.** In *Williams,* the union and the employer successfully negotiated a collective bargaining agreement after the union's request for negotiations. *See* 315 U.S. at 402, 62 S.Ct. at 668.

cation, the collective bargaining waiting period and mediation process created by the statute would have been well advanced, if not completed, by now. These circumstances require an order barring any further changes in wages, rules and working conditions outside the collective bargaining/mediation process prescribed in the Railway Labor Act's *status quo* provisions. This result is thoroughly consistent with *Williams* as illuminated by *Detroit & Toledo Shore Line.* The injunction requiring negotiations will emphasize the good faith obligation imposed by Paragraph Seventh of 45 U.S.C. § 152 by barring further unilateral changes in working conditions and other interference with the IAM's performance of its representation responsibilities.

■ Finally, the Court must consider whether its authority to issue such relief is barred or constrained by the provisions of the Norris-LaGuardia Act, 29 U.S.C. §§ 101 *et seq.* Section 4 of that Act provides that certain actions arising out of labor disputes shall not be subject to injunction. TWA's attempt to characterize its unilateral changes in working conditions as one of these unenjoinable acts is unsupported by citations to case law and is utterly unconvincing.[10] Moreover, it has long been established that the requirements of the Norris-LaGuardia Act must be accommodated to the specific provisions of the Railway Labor Act, *see Brotherhood of R.R. Trainmen v. Chicago River and Indiana R.R. Co.*, 353 U.S. 30, 40–42, 77 S.Ct. 635, 640–42, 1 L.Ed.2d 622 (1957), and that the judiciary is empowered to issue an injunction when it is "the only practical, effective means" of enforcing a duty imposed by the Railway Labor Act. *Chicago & North Western Ry. Co. v. United Transp. Union*, 402 U.S. 570, 582, 91 S.Ct. 1731, 1737, 29 L.Ed.2d 187 (1971). In this case, it is undis-

puted that TWA has consistently refused to bargain with the certified representative of its passenger service employees. Indeed, it has taken the untenable position that it would be unlawful to bargain before judicial review of the certification has run its course, presumably through this Court, the Court of Appeals and the certiorari process of the Supreme Court. TWA has thereby extended the power to alter working conditions under *Williams v. Jacksonville Terminal Co.*, 315 U.S. 386, 62 S.Ct. 659, 86 L.Ed. 914 (1942), well beyond the time contemplated by any plausible interpretation of the Railway Labor Act. An injunction requiring TWA to commence bargaining and prohibiting any further unilateral changes is therefore the only "practical, effective means" of protecting the employees' rights to organize and bargain collectively under the Act and such an injunction may therefore be issued despite the anti-injunction provisions of the Norris-LaGuardia Act.

■ TWA argues in the alternative that this Court must follow certain procedural requirements of the Norris-LaGuardia Act before issuing any injunctive relief. They invoke section 7 of that Act which provides, in part, that

No court of the United States shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute ... except after hearing the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court, to the effect—

(a) That unlawful acts have been threatened and will be committed unless

---

**10.** For example, TWA asserts that it is protected from a status quo injunction by 29 U.S.C. § 104(d) which forbids an injunction prohibiting any person from "aiding any person participating or interested in any labor disputes, who ... is prosecuting ... any action or suit in any court of the United States." *See* TWA's Memorandum in Opposition to the IAM's Motion for Summary Judgment Ordering TWA to Restore

and Maintain "Status Quo" at 30. TWA claims that an order requiring it to maintain current working conditions would somehow prohibit it from aiding the individual plaintiffs in this lawsuit. *Id.* It is unclear how TWA believes that altering the current working conditions "aids" these passenger service employees unless it is by weakening the authority of the union.

restrained or have been committed and will be continued unless restrained ...;

(b) That substantial and irreparable injury to complainant's property will follow;

(c) That as to each item of relief granted greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by the granting of relief;

(d) That complainant has no adequate remedy at law; and

(e) That the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection.

29 U.S.C. § 107. TWA argues that this provision requires this Court to hold an evidentiary hearing before issuing any injunctive relief. At that hearing, it could be anticipated that TWA would offer testimony on the issues of fact specified by the Norris-LaGuardia Act, namely, whether this action threatens substantial and irreparable injury to [IAM's] "property" and whether the injury to TWA posed by such an injunction is greater than the injury that will be inflicted on the IAM if relief is denied. *See* TWA's Rule 108(h) Statement of Material Facts Necessary to be Litigated at 13.

TWA has cited no case holding that this Court is required to hold such a hearing or make these findings before ordering an employer to perform the duties prescribed in the Railway Labor Act. Indeed, such a decision would violate the principle, firmly established by the Supreme Court, that the explicit provisions of the Railway Labor Act take precedence over the commands of the Norris-LaGuardia Act. This rule of interpretation does not apply exclusively to the prohibition of injunctions contained in Norris-LaGuardia Act Section 4. In *Virginian R.R. Co. v. System Fed. No. 40*, 300

U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 (1937), for example, an employer challenged a trial court order requiring it to treat with a union certified pursuant to the Railway Labor Act on the ground that the order did not comply with section 9 of the Norris-LaGuardia Act.[11] The Supreme Court held that

The evident purpose of [section 9], as its history and context show, was not to preclude mandatory injunctions, but to forbid blanket injunctions against labor unions, which are usually prohibitory in form, and to confine the injunction to the particular acts complained of and found by the court. We deem it unnecessary to comment on other similar objections, except to say that they are based on strained and unnatural constructions of the words of the Norris-LaGuardia Act, and conflict with its declared purpose, section 2 (29 U.S.C.A. § 102), that the employee "shall be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection."

300 U.S. at 563, 57 S.Ct. at 606. *Virginian Railroad Co.* therefore requires that the procedural provisions of the Norris-LaGuardia Act be read in light of that Act's stated policies and that these provisions can not be construed to conflict with the relief authorized under the Railway Labor Act. In this case, no valid purpose would be served by holding the evidentiary hearing contemplated in section 7 of the Norris-LaGuardia Act. The facts central to this Court's ruling, i.e., that TWA has refused to negotiate with the certified representative of its employees and has altered the terms and conditions of employment, are

---

**11.** That section provides, in part, that

No restraining order or temporary or permanent injunction shall be granted in a case involving or growing out of a labor dispute, except on the basis of findings of fact made and filed by the court in the record of the case prior to the issuance of such restraining order or injunction; and every restraining order or

injunction granted in a case involving or growing out of a labor dispute shall include only a prohibition of such specific act or acts as may be expressly complained of in the bill of complaint or petition filed in such case and as shall be expressly included in said findings of fact made and filed by the court as provided in this chapter.

not in dispute. Moreover, the required findings of fact contained in section 7 are simply inapplicable in this case where a union seeks to compel an employer to comply with the commands of the Railway Labor Act. The Norris-LaGuardia Act's policy of protecting the rights of "the individual, unorganized worker" to "full freedom of association, self-organization, and designation of representatives of his own choosing to *negotiate the terms and conditions of his employment*" (emphasis added) would be ill served by further postponing the resolution of this matter in order to hold a time-consuming evidentiary hearing. 29 U.S.C. § 102. Moreover, it is inconceivable that Congress intended to permit a union to enforce the rights explicitly granted to it under the Railway Labor Act only upon a showing that denial of enforcement would result in "irreparable harm" to the union's "property." For these reasons, TWA's contention that the provisions of section 7 of the Norris-LaGuardia Act must be satisfied in this case must be rejected. *Accord Brotherhood of R.R. Carmen of America, Local No. 429 v. Chicago & North Western Ry. Co.*, 354 F.2d 786, 796 (8th Cir.1965); *Local 553, Transport Workers Union of America v. Eastern Air Lines, Inc.*, 544 F.Supp. 1315, 1329–31 (E.D.N.Y.1982), *aff'd in relevant part*, 695 F.2d 668, 678–79 (2d Cir.1982).

## ORDER

### I.

Consolidated Civil Action No. 86–2980 comes before the court on the International Association of Machinists and Aerospace Workers' ("IAM") Motion for Summary Judgment and the National Mediation Board's Motion to Dismiss, or in the Alternative, for Summary Judgment. For the reasons stated in the accompanying memorandum, it is this 18th day of February, 1987, hereby

ORDERED: that the IAM's Motion for Summary Judgment and the NMB's Motion to Dismiss, or in the Alternative, for Summary Judgment, should be, and are hereby, GRANTED; and it is further

ORDERED: that the complaints in consolidated Civil Action No. 86–2980 should be, and are hereby, DISMISSED.

### II.

Civil Action No. 86–1912 is before the court on the IAM's motion for injunctive relief. The undisputed material facts of record establish that Trans World Airlines, Inc., ("TWA") has refused to negotiate with the IAM over the wages, rules and working conditions of its passenger service employees despite a May 23, 1986 certification by the National Mediation Board. This refusal to negotiate with the duly certified representative of its employees violates Section 2, First, Fourth and Ninth of the Railway Labor Act, 45 U.S.C. § 152, First, Fourth and Ninth. This unlawful behavior has extended unreasonably the time during which TWA is privileged to unilaterally alter the working conditions of its employees under *Williams v. Jacksonville Terminal Co.*, 315 U.S. 386, 62 S.Ct. 659, 86 L.Ed. 914 (1942). Accordingly, it is hereby

ORDERED: that Trans World Airlines, Inc., its officers, agents and assigns shall treat with the IAM as the certified collective bargaining representative of the craft and class of passenger service employees, pursuant to Section 2, Ninth of the Railway Labor Act, 45 U.S.C. § 152, Ninth, and it is further

ORDERED: that Trans World Airlines, Inc., its officers, agents and assigns, shall henceforth be enjoined from making any further unilateral changes in the wages, rules and working conditions of the passenger service employees prior to the exhaustion of the dispute resolution procedures of the Railway Labor Act. 45 U.S.C. § 156.