124 F.3d 211
 157 L.R.R.M. (BNA) 2215
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
CONTINENTAL MICRONESIA, INC. Plaintiff-Appellee,
v.
NATIONAL MEDIATION BOARD, Defendant-Appellant,
and
INTERNATIONAL BROTHERHOOD OF TEAMSTERS, Defendant-Appellant.
 Nos. 96-15737, 96-15865.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 9, 1997.
Decided Sept. 23, 1997.
 
 Appeal from the United States District Court for the Northern Mariana Islands, No. CV 95-0019; Alex R. Munson, District Judge, Presiding.
 Before: REINHARDT, T.G. NELSON, and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The National Mediation Board (NMB) appeals the district court's sua sponte grant of summary judgment in favor of Continental Micronesia, Inc. (CMI) reversing the certification of the Teamsters as the bargaining representative of CMI's Saipan fleet and passenger service employees. We reverse with instructions to dismiss for lack of jurisdiction. Because the parties are familiar with the facts, we need not repeat them here.
 
 
 3
 Section 152, Ninth of the Railway Labor Act, 45 U.S.C. § 152, Ninth, "gives the NMB, and not the judiciary, the 'power to resolve controversies' concerning representation." America West Airlines v. National Mediation Bd., --- F.3d ----, No. 96-17056, 1997 WL 381152, at * 2 (9th Cir. July 11, 1997) (quoting Brotherhood of Ry. & S.S. Clerks v. Association for the Benefit of Non-Contract Employees, 380 U.S. 650, 659 (1965)). A representation dispute is "to reach its last terminal point" when the NMB makes its administrative finding, and there is to be "no dragging out of the controversy into other tribunals of law." Id. (quoting Railway Clerks, 380 U.S. at 659). Accordingly, judicial review of NMB decisions is "extraordinarily limited," Professional Cabin Crew Ass'n v. National Mediation Bd., 872 F.2d 456, 459 (D.C.Cir.1989), and "one of the narrowest known to law." International Ass'n of Machinists v. Trans World Airlines, 839 F.2d 809, 811 (D.C.Cir.), as modified, 848 F.2d 232 (1988). "[J]udicial review of an NMB representation decision is available only upon a showing, on the face of the pleadings, that the NMB either violated the Constitution or committed a gross violation of the RLA." America West, 1997 WL 381152, at * 2. If a cursory and superficial "peek at the merits" reveals no constitutional or gross statutory violation that is obvious on the face of the pleadings, the case must be dismissed. Id. We review the district court's grant of summary judgment and its finding of jurisdiction de novo. United States v. Matta-Ballesteros, 71 F.3d 754, 762 (9th Cir.1995), as modified, 98 F.3d 1100 (9th Cir.1996) (jurisdiction); Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1994) (summary judgment).
 
 
 4
 Our cursory and superficial "peek at the merits" reveals no "gross violation" of the Constitution, or of the NMB's statutory duty to investigate the overall representation dispute. First, though the election was close, even CMI does not dispute that the erroneous inclusion of Lisua alone could not have affected the outcome. The vote was 74 out of 149 against the Teamsters, and under the rules of the Key ballot, the Teamsters would have won certification even on a tie vote. Thus, the Board's alleged errors could have affected the outcome only if it erred with respect to both Lisua and John.[1] We lack jurisdiction to consider errors that could not have affected the outcome of the election. America West, 1997 WL 381152, at * 5 (challenge to certification decision is moot when election outcome would have been the same even absent the alleged gross violation of the RLA). Accordingly, unless the inclusion of John was a "gross violation" of the RLA, any error that the Board may have committed with respect to Lisua is moot.
 
 
 5
 The inclusion of Selina John was not a "gross violation" of the RLA. To the contrary, our "peek" at the merits reveals that John's inclusion was largely attributable to CMI's own errors. CMI never raised a timely and proper objection to John. Both letters from CMI concerning John's eligibility misstated both his name and his employment status. The evidence indicates that the mediator looked for a "John Selina" on the eligibility list and, of course, found no such person. Even though the omission of the second letter and supporting documentation from the master file may have prevented the mediator from serendipitously discovering John's true identity and employment status, neither the mediator nor the Board was under any judicially enforceable duty to ferret out an employer's own errors as to the eligibility of a specific voter. Mere imperfections in the Board's investigation are insufficient to invoke our extraordinarily limited jurisdiction over its decisions. "[R]eviewing a certification after an investigation by the NMB and reviewing whether the NMB made its statutory investigation at all are two completely different matters.... [W]e cannot, and do not, review the former." International In-Flight Catering Co. v. National Mediation Bd., 555 F.2d 712, 717 (9th Cir.1977). In light of CMI's own responsibility for any error with respect to John, we fail to see how it may now invoke our extraordinarily limited jurisdiction over NMB certification decisions.[2]
 
 
 6
 CMI also argues that notwithstanding its own errors, it is per se a "gross violation" of the RLA for the Board to count the vote of a discharged employee who lacks even a pending claim for reinstatement at the time of the ballot count. We reject this contention as well. "[I]t is within the sole jurisdiction of the NMB to decide who is eligible to vote" in a representation election." America West, 1997 WL 381152, at * 4. The Board has exclusive authority to "designate who may participate in the election and establish the rules to govern the election." 45 U.S.C. § 152, Ninth. While there are limits to the NMB's discretionary authority, as there are to the application of all rules, see Lising v. INS, --- F.3d ----, No. 94-70445 (9th Cir.1997), the per se rule suggested by CMI would be contrary to the statutory scheme. Courts generally lack jurisdiction to review NMB voting eligibility determinations, even where the Board has allowed non-employees with no pending reinstatement actions to vote--a in this case--or where it has prevented actual employees from voting. See, e.g., Virgin Atlantic Airways v. National Mediation Bd., 956 F.2d 1245, 1251 (2d Cir.1992) (no jurisdiction where the Board counted discharged employees whose reinstatement actions had already been denied before the ballot count); Professional Cabin Crew Assoc. v. National Mediation Bd., 872 F.2d 456, 460-62 (D.C.Cir.1989) (no jurisdiction where the Board allowed permanently replaced strikers on a "preferential rehire" list to vote); British Airways Bd. v. National Mediation Bd., 685 F.2d 52, 56 (2d Cir.1982) (no jurisdiction where the Board excluded all employees hired in the two-year period between the eligibility cut-off date and the actual balloting). Indeed, jurisdiction is lacking even when the Board violates its own procedures in a manner that determines the outcome of a representation election. International Ass'n of Machinists v. Trans World Airlines, 839 F.2d 809 (D.C.Cir.), modified, 848 F.2d 232 (D.C.Cir.1988) (no jurisdiction where, in violation of its own procedures, the Board refused to allow the deciding block of passenger service employees to vote in their own representation election because they had volunteered temporarily as flight attendants).
 
 
 7
 We note that CMI does not dispute that the Board may count the votes of persons who are no longer "employees" under some circumstances, but argues instead that the only non-employees who may be allowed to vote are those who have a continuing connection to the employer in the form of a pending reinstatement action or preferential rehiring status. The cases do not contain such a limiting rationale, however, but instead stress the plenary and unreviewable discretion of the Board over voting eligibility determinations and procedures. See, e.g., Professional Cabin Crew, 872 F.2d at 461 (refusing to attach "much significance" to the fact that the former strikers who were allowed to vote had retained their seniority rights and were recalled as work became available). In any event, the Board committed no "gross violation" by counting John, who maintained a much stronger connection to CMI than a pending reinstatement action or preferential rehiring status: notwithstanding CMI's letters to the Board stating that John had "resigned" from the company, Teamsters' SER at 2, 3, John had merely transferred to CMI's office on the island of Truk and thus remained an actual CMI employee. The RLA does not expressly prohibit the Board from counting the ballot of an employee who has recently transferred within the company to a foreign office where he continues to perform the same type of work as before. Independent Union of Flight Attendants v. Pan Am, 923 F.2d 678, 682 (9th Cir.1991) ("The RLA does not expressly except purely foreign flying from its coverage."), vacated as moot, 966 F.2d 457 (9th Cir.1992) (vacating holding that RLA does not apply extraterritorially). Again, absent a "gross violation" of some explicit command in the RLA, we lack jurisdiction to review the Board's determinations.
 
 
 8
 In sum, we conclude that neither the inclusion of Lisua and John on the eligibility list, nor the other, lesser misconduct alleged by CMI,[3] amounts to a "gross violation" of the RLA or a constitutional violation that is sufficient to confer jurisdiction upon us, or upon the district court. We also conclude that the Board did not breach its statutory duty to investigate the overall representation dispute. Accordingly, we reverse and remand to the district court with instructions to dismiss for lack of jurisdiction.
 
 
 9
 REVERSED and REMANDED with instructions to dismiss for lack of jurisdiction.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Indeed, the Board contends that even if it erred with respect to both individuals, the error would not have affected the outcome. As the Board points out, it had the power to deem timely the Teamsters' objection to Esther Marple, but chose not to do so. If timeliness were to be waived, the Board suggests, it should have been waived in Marple's case as well, and the end result would have been certification on a tie vote. We need not rely on this argument here
 
 
 [2]
 CMI's contention that the inclusion of John and Lisua was a "gross violation" of the RLA is further weakened by its failure to object in a timely fashion at the ballot count itself. CMI was represented by counsel at the ballot count yet did not object in any way to the inclusion of John and Lisua. It was not unreasonable for the Board to expect an employer that is present and represented by counsel to object to a "gross violation" of law that might affect the outcome of the election
 
 
 [3]
 CMI also alleges that the Board grossly violated the RLA by treating certain duplicate ballots inconsistently, and by conducting an election ridden with alleged irregularities. We have reviewed all of these contentions and conclude that each falls within the "gross violation" rule that controls this case