**KEY AIRLINES, INC., Plaintiff,**

v.

**NATIONAL MEDIATION BOARD, Defendant.**

**Civ. A. No. 89–3282 (HHG).**

United States District Court, District of Columbia.

July 31, 1990.

Michael L. Lowry, Ford & Harrison, Atlanta, Ga., Thomas P. Murphy, McGuire, Woods, Battle & Boothe, Washington, D.C., for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., Jay B. Stephens, U.S. Atty., Theodore C. Hirt, Joseph V. Jest, Attys., Federal Programs Branch, U.S. Dept. of Justice, Washington, D.C., for defendant; (Ronald M. Etters, Gen. Counsel, National Mediation Bd., of counsel).

Patrick J. Riley, Intern. Broth. of Teamsters, Washington, D.C., for International Broth. of Teamsters, Airline Div.; (James T. Grady, Gen. Counsel, Intern. Broth. of Teamsters, of counsel).

## MEMORANDUM AND ORDER

HAROLD H. GREENE, District Judge.

Before the Court are cross-motions for summary judgment in a challenge by Key Airlines, Inc., to balloting procedures employed by the National Mediation Board in a representation election. Employees were instructed not to return ballots if they favored union representation but to return them only if they were opposed. The Mediation Board chose this method of proceeding because of Key's record of harassing union supporters on its payroll and of attempting improperly to influence the outcome of prior representation elections. For the reasons stated below, the defendant's motion for summary judgment is granted. The intervenor's motion for summary judgment on its counterclaim is, likewise, granted. Plaintiff's motion for summary judgment is denied.

I

In April 1986, the Board found that Key Airlines had violated the Railway Labor Act, 45 U.S.C. § 151 *et seq.* by, among other things, forcing employees involved in organizing to resign and by polling employees on their support for the union. Based on this finding, the Board issued an order on March 27, 1987 modifying its normal election procedures. A special ballot known as a "Laker Ballot" was used. The form of the ballot provided: "Do you desire to be represented by the Key Airlines Pilots Association" with boxes marked "yes" and "no". Of twenty-six pilots, two voted for representation by the Association while nineteen voted against. Of sixteen flight engineers, five voted for the union and six voted against it. Accordingly, the Board dismissed the representation application.

In December 1988, the International Brotherhood of Teamsters applied to represent Key Airlines pilots, flight engineers, and flight attendants. On January 27, 1989, the union filed a complaint with the Mediation Board that Key Airlines had interfered with the rights of its employees to organize in violation of the Railway Labor Act. The union also requested that the Board proceed with a representation election, and the Board did so. Of thirty-nine pilots, nine voted for the union and one for the Airline Pilots Association, with the remainder against representation. Of twenty-two flight engineers, eight voted for representation.

The Board, however, set aside the results of the election on the grounds that "Key has again engaged in a carefully designed and calculated campaign to interfere with, influence and coerce its employees in their choice of representatives."[1] The incidents, the Board found, were "disturbingly similar" to those in the 1986 elections.

The Board then proposed a balloting procedure in which the non-return of the ballot was counted as a vote for union representation. The balloting instructions explained how to vote and the consequences of not returning a ballot.[2] Other communications during the election period also conveyed the significance of not returning a ballot. The Board provided a four-week voting period to give employees ample opportunity to return their ballot. Notice of the election was posted on employee bulletin boards, and the Board provided duplicate ballots to any eligible voter who did not receive a ballot and wished to vote.

Of fifty-eight eligible flight attendants, forty voted for Teamster representation while eighteen voted against it. Of the thirty-eight eligible pilots, sixteen voted for representation and twenty voted against it. Of twenty-one flight engineers, ten voted for representation and eleven voted against it. Accordingly, the Board certified the flight attendants but dismissed the Teamster's application to represent the flight engineers and pilots. Key Airlines then refused to bargain with the Teamsters and initiated the instant action to have the election voided.

Cross-motions for summary judgment on the complaint are pending. The Teamsters

---

1. The Board found that the airline had violated the Railway Labor Act by (1) dismissing a veteran pilot because he had discussed the benefits of unionization with two flight attendants; (2) transferring a flight attendant, one of the union's leading advocates, from her flight duties in Las Vegas to a clerical assignment in Herndon, Virginia, which encompassed revising the airline's weight and grooming programs and proofreading the revised flight attendant manual; (3) granting pay raises to pilots and flight engineers who had not yet filed an application for union representation while denying raises to flight attendants who had filed such an application; and (4) repeatedly stating that Key might merge with World Airways, in which case Key's employees' job security would be at stake should they unionize.

2. The ballot instructed that, "You may exercise your choice in either of the two following ways. If you wish to be represented by the International Brotherhood of Teamsters–Airline Division, do not return your ballot to the NMB. Should less than a majority of the eligible voters return valid ballots, the International Brotherhood of Teamsters–Airline Division will be certified. However, if you are opposed to representation by the International Brotherhood of Teamsters–Airline Division, mark an "X" in the box below and return your ballot to the NMB before 2 p.m., August 1, 1989. Should a majority of the employees return valid ballots opposing representation, no representative will be certified."

have intervened in the action, filed a counterclaim for an order directing Key to bargain in good faith, and moved for summary judgment on that claim. The sole issue raised by all these filings is the validity and propriety of the balloting procedure.

## II

Judicial review of NMB decisions has long been one of the narrowest known to law. *IAM v. TWA*, 839 F.2d 809, 811 (D.C. Cir.1988). In *Switchmen's Union v. National Mediation Board*, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61 (1943), the Supreme Court found that the responsibility for protecting collective bargaining rights was entrusted by Congress exclusively to the Board, not the Court. 320 U.S. at 305, 64 S.Ct. at 99. Congress' intent

> seems plain—the dispute was to reach its last terminal point when the administrative finding was made. There was to be no dragging out of the controversy into other tribunals of law.

*Id.* The holding in *Switchmen's* was confirmed in *Brotherhood of Rwy. and Steamship Clerks v. Association for the Benefit of Non–Contract Employees*, 380 U.S. 650, 85 S.Ct. 1192, 14 L.Ed.2d 133 (1965), which held that ballot procedures fall within the discretionary powers of the NMB. The Court noted that section 2, Ninth of the Railway Labor Act "instruct[s] the Board alone to establish the rules governing elections" and to "utilize any other appropriate method of ascertaining the names of their duly designated and authorized representatives in such manner as shall ensure the choice of the representative by the employee without interference, influence, or coercion exercised by the carrier." 380 U.S. at 668, 85 S.Ct. at 1202. The Court concluded:

> Thus, not only does the statute fail to spell out the form of any ballot that might be used but it does not even require selection by ballot. It leaves the details to the broad discretion of the Board with only the *caveat* that it 'insure' freedom from carrier interference. That the details of selecting representatives were to be left for the final deter-

mination of the Board is buttressed by the legislative history clearly indicating as much. In summary, then, the selection of a ballot is a necessary incident of the Board's duty to resolve disputes.

Judicial review may be conducted only upon a "showing on the face of the pleadings that the certification decision was a gross violation of the RLA or that it violated the constitutional rights of an employer, employee, or Union." *Professional Cabin Crew Ass'n v. National Mediation Bd.*, 872 F.2d 456, 459 (D.C.Cir.1989).

Given the narrow scope of review and Key's record of attempting improperly to influence representation elections, there is no merit to the plaintiff's challenge to the ballot procedure selected by the Board. Not dissimilar procedures were upheld in *Virginian Railway Co. v. System Federation No. 40*, 300 U.S. 515, 559–61, 57 S.Ct. 592, 605–06, 81 L.Ed. 789 (1937) (employees who did not return ballots were considered to have voted along with the majority of those employees returning ballots), and *Railway Clerks*, 380 U.S. at 668–71, 85 S.Ct. at 1201–03 (employees not returning ballots were deemed to have voted against representation). Likewise, the Court of Appeals for this Circuit as well as a number of other courts have rejected challenges to a ballot procedure under which employees voting for a union that receives less than a plurality of votes are deemed to have voted for a rival union that receives a plurality of votes, as long as the majority of employees voted in favor of some form of representation. *IAM v. TWA*, 839 F.2d 809, 810–12 (D.C.Cir.1988); *Aeronautical Radio v. National Mediation Bd.*, 380 F.2d 624, 626 (D.C.Cir.1967). *See also, Zantop Int'l Airlines, Inc. v. National Mediation Bd.*, 732 F.2d 517, 520–22 (6th Cir.1984); *USAir, Inc. v. National Mediation Bd.*, 711 F.Supp. 285, 294–95 (E.D.Va.1989), *aff'd mem.*, 894 F.2d 403 (4th Cir.1989).

Plaintiff asserts that the Railway Labor Act prohibits such a balloting procedure because the words "designate" and "authorize" found in section 2, Ninth, are "transitive verbs [which] require affirmative acts." Opp. at 3, 16 n. 6. The decisions *supra* amply refute the claim, and in any

event the broad discretion accorded the Board by statute and by ample caselaw cannot be overcome because "designate" and "authorize" are transitive verbs.

Plaintiff next attempts to recast its challenge to the balloting procedure as a claim that the Board breached its duty to investigate representation disputes. At the heart of this claim, however, is plaintiff's assertion that the ballot procedure did not properly disclose the flight attendants' representation preferences. Plaintiff cannot evade the narrow scope of judicial review of NMB decisions concerning ballot procedures by recasting its complaint about the substance of the decision as a "failure to investigate" claim. *IAM v. TWA,* 654 F.Supp. 447, 450–51 (D.D.C.1987), *aff'd in relevant part,* 839 F.2d 809 (D.C.Cir.1988); *Zantop International Airlines v. National Mediation Board,* 732 F.2d 517, 522 (6th Cir.1984) (rejecting attack of representation decision "couched in terms of failure to investigate").

*International In–Flight Catering Co., Ltd. v. National Mediation Board,* 555 F.2d 712 (9th Cir.1977), upon which the plaintiff heavily relies offers no support for its position. The facts here are very different from those in that case where judicial review was permitted. In *In–Flight Catering,* certification was based on authorization cards signed by a majority of the employees. In challenging certification, the employer produced affidavits that the employees who had signed the cards had been told that the purpose of the cards was to obtain an election, not that the cards were a designation of a representative. The Court of Appeals permitted judicial review to determine whether the Board had inves-

tigated this factual dispute. In the instant case, there are no factual disputes, much less supporting affidavits.

In any event, the complaint and exhibits submitted by plaintiff itself demonstrate that the Board investigated the representation dispute, made findings of fact, considered objections to those findings, held representation elections based on that investigation and certified the results. The statutory command to investigate requires:

> only "such investigation as the nature of the case requires" and the investigation is not required to take any particular form ... Congress has simply told the Board to investigate and has left to it the task of selecting the methods and procedures which it should employ in each case.

*Professional Cabin Crew Ass'n,* 872 F.2d at 465, quoting, *Railway Clerks,* 380 U.S. at 662, 85 S.Ct. at 1198.

Plaintiff next relies on an out-of-context quotation from the Board's Representation Manual to the effect that a vote should be considered a vote in favor of representation only when "the specific intent of the voter is clear." Board Representation Manual § 11.307–8. The section of the Manual quoted by plaintiff relates to the issue whether, for tabulation purposes, a returned ballot has been properly marked by the employee. It does not in any way concern or call for a determination of the reasoning or motivation underlying any vote; nor does it apply to any ballot that has not been returned.[3]

In light of Key's history of harassment of employees, its expressions of concern for the "rights" of its flight attendants ring hollow. Likewise, its complaint that

---

**3.** This is readily apparent from a review of section 11.307–8 and related sections of the Representation Manual. Section 11.307 is entitled *"Ballot Determination—Valid, Void or Incomplete,"* and sections 11.307–1 *et seq.* provide guidelines for determining whether a ballot has been properly marked or returned, or has been improperly marked or returned and thus is void or incomplete. Section 11.307.2 provides, for example, that when an employee who has voted in person also returns a ballot by mail, then the mail ballot is invalid and should not be opened. Likewise, under section 11.307.3 when an eligible voter returns both an original and duplicate

ballot envelope, the original is opened and tabulated and the duplicate is rule invalid. Under section 11.307–6, a ballot marked in more than one square is to be considered void and is so tabulated.

Section 11.307–8 in turn is entitled *Properly Marked—Voter's Intent,"* and provides as follows:

> A ballot which is properly marked in one square where the voter's intent is clear should be declared valid. Ballots not otherwise voided, will be considered valid by the Mediator when the specific intent of the voter is clear to the Mediator.

the balloting procedure are "unfair" and "undemocratic" are meritless; its protests are undercut by its history of efforts to undermine fair and democratic elections. Its speculation that Key flight attendants might have declined to mail in ballots because they were Seventh Day Adventists and their religion opposes voting, Opp. at 16 n. 8, is, to say the least, farfetched.

There is, of course, some truth to plaintiff's claim that the Board's balloting procedures "tilts the playing field" in the union's favor. Opp. at 17. However, the Board's mandate is to adopt proper voting conditions, and its chosen procedure is nothing more than an attempt to undo the damage done by Key's unprecedented campaign of harassing employees who favor union representation. In any event, the tilt was not unduly steep, since Key's pilots and flight engineers rejected Teamster representation.

Plaintiff's sole argument in opposition to intervenor's motion for summary judgment is that it should not be ordered to bargain until the Court has ruled on its challenge to the balloting procedure. The Court has now done so, and since plaintiff has adduced no other argument against summary judgment, intervenor's motion will be granted.

Accordingly, it is this 31st day of July, 1990

ORDERED that plaintiff's motion for summary judgment be and it is hereby denied; and it is further

ORDERED that defendants' motion for summary judgment be and it is hereby granted; and it further

ORDERED that the complaint be and it is hereby dismissed; and it further

ORDERED that intervenor's motion for summary judgment be and it is hereby granted; and it is further

ORDERED that plaintiff shall bargain in good faith with the International Brotherhood of Teamsters as the certified representative of the Airlines' flight attendants.