**BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYEES, et al., Plaintiffs–Appellees,**

v.

**GRAND TRUNK WESTERN RAILROAD COMPANY, Defendant–Appellant.**

No. 91–1631.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 27, 1992.

Decided April 17, 1992.

Stuart M. Israel, Miller, Cohen, Martens & Ice, Southfield, Mich., Donald F. Griffin (Argued and Briefed), Richard S. Edelman, Highsaw, Mahoney & Clarke, Washington, D.C., for plaintiffs-appellees.

I. Michael Greenberger (Argued and Briefed), Shea & Gardner, Washington, D.C., John A. Ponitz, Grand Trunk R. Co., Detroit, Mich., for defendant-appellant.

Before: JONES and NELSON, Circuit Judges; and LIVELY, Senior Circuit Judge.

LIVELY, Senior Circuit Judge.

This case involves a disagreement over a certification by the National Mediation Board (NMB or Board) under the Railway Labor Act (RLA or the Act), 45 U.S.C. § 151 et seq. More specifically, it requires us to decide whether the matter presented to and resolved by the NMB was a "representation dispute." The RLA grants exclusive jurisdiction over such disputes to the NMB, and there is no judicial review of the Board's decisions. The district court treated the matter before the NMB in this case as something other than a true representation dispute and granted summary judgment in favor of the unions, interpreting the NMB's decision as urged by the unions. The railroad appeals, and we reverse.

I.

A.

In 1981 the Grand Trunk Western Railroad Company (GTW) acquired the Detroit, Toledo and Ironton Railroad (DT & I) and the Detroit Toledo Shore Line Railroad (DTSL), merging them into GTW. Initially GTW honored all agreements with the plaintiff unions that had been in effect prior to the merger. Following the merger, GTW and the unions negotiated single, unified collective bargaining agreements for all the electricians and carmen on the merged GTW. But GTW continued to deal with the same union officers who had been representatives of six other crafts or classes of employees under agreements with DT & I and DTSL.

In 1989, however, after the unions denied GTW's request that they name a single representative to negotiate for each craft or class of employees system-wide, GTW petitioned the NMB to resolve its dispute with the unions over the status of representatives who had been certified for DT & I and DTSL before the merger. This request was made pursuant to Section 2 Ninth of the Railway Labor Act, 45 U.S.C. § 152, which states, in pertinent part,

[I]f any dispute shall arise among a carrier's employees as to who are [the designated and authorized] representatives ... it shall be the duty of the Mediation Board, upon request of either party to the dispute, to investigate such dispute and to certify to both parties ... the name or names of the individuals or organizations that have been designated and authorized to represent the employees involved in the dispute....

The petition requested the NMB to find that "the merged GTW system constituted a single bargaining unit for each of the crafts or classes of employees represented by the unions." GTW also requested the NMB to determine what effect the creation of a single transportation system had on the representation certifications of DT & I, DTSL and GTW. The railroad argued that the fragmented representation resulting from continued recognition of pre-merger

bargaining units prevented effective bargaining.

The Board issued an opinion on June 18, 1990, 17 *NMB* 79 (1990), finding that, following merger, the three railroads constituted a single entity. The NMB also concluded that certification of system-wide bargaining representatives would not impair the classes formerly represented by union officers from former DT & I and DTSL units. The NMB refused, however, to designate specific spokespersons for each class of employees.

GTW then notified its employees and the unions that all union representation on behalf of former DT & I and DTSL employees would be provided by the comparable union committee that represented GTW employees. GTW notified the NMB of the procedures it had implemented and advised that the unions were resisting the changes.

### B.

The unions [1] filed this action in the district court seeking a declaratory judgment that GTW violated the Act by failing and refusing to treat with officials of the unions who had been designated to administer collective bargaining agreements applicable to certain crafts and classes of GTW employees, that is, the representatives of former DT & I and DTSL employees. They also sought an injunction against any such future violations. The complaint stated that the plaintiff unions represented various GTW employees under agreements with the three railroads that existed prior to the merger. Following the decision of the NMB, GTW began denying claims and grievances of employees when submitted by "subordinate units" of the unions, which GTW did not recognize as proper representatives of its employees. The unions sought an order requiring GTW to recognize representatives of these subordinate units as certified representatives of the employees who originally worked for the pre-merger railroads.

In its answer GTW admitted that it had sought a decision from the NMB that would "remove the fragmentation of collective bargaining units on the GTW property and permit GTW to bargain with a single representative of each craft or class on its property." GTW asserted that the NMB decision extinguished the certifications of the pre-merger representatives, and that it could not handle claims or grievances submitted by those persons. GTW maintained that its actions were in accord with the Board decision, and denied that the unions were entitled to declaratory or injunctive relief.

Both sides then filed motions for summary judgment with supporting documents, briefs and responses. The district court held a hearing on the cross-motions, and took the case under submission.

### C.

The district court, Judge Julian A. Cook, promptly issued a decision. His order began with a brief recital of the history of the relationship between the unions and the pre-merger carriers and with the merged GTW. The order then discussed the NMB decision on GTW's petition. The court noted that the NMB found that the three railroads had combined to form a single system and that extinguishment of the certifications on the DT & I and DTSL would not deprive any employee of union representation on the merged railroad. The same unions represented each craft and class on the three carriers, and GTW had extended system-wide recognition to the three unions as representatives of their respective crafts and classes.

The district court then turned to the NMB's disposition of GTW's request for the designation of specific spokespersons for each craft or class of employees. As the court pointed out, the NMB had denied this request because it was "not within the purview of the [NMB] to designate specific individuals to act on behalf of labor orga-

---

**1.** The plaintiff unions are the Brotherhood of Maintenance of Way Employes (BMWE), the International Brotherhood of Electrical Workers (IBEW), the Transportation Communications International Union (TCU), and the United Transportation Union (UTU).

nizations." (quoting NMB decision of June 18, 1990).

The district court found from case law that the RLA does not permit either management or a union to designate the other's bargaining representative. See *United Transportation Union v. Grand Trunk Western R.R.*, 901 F.2d 489, 490 (6th Cir.) ("But the Act expressly preserves each party's right to choose its own bargaining representative."), *cert. denied,* ——— U.S. ———, 111 S.Ct. 55, 112 L.Ed.2d 31 (1990). The district court found that GTW was seeking to force the unions to designate one bargaining representative from each union, but that it had no authority to reject the bargaining agents who had been chosen by the unions.

Thus, the district court found the unions' interpretation of the NMB decision to be correct, and granted their motion for summary judgment. The district court merely declared the law and did not enter an injunction. The court recognized that the NMB has "exclusive jurisdiction over all representational disputes," and referred to this case as "this action (or perhaps more appropriately, inaction)," but did not discuss its own jurisdiction.

### II.

On appeal GTW contends that the proceedings it initiated before the NMB involved a pure "representation dispute" and that the district court lacked subject matter jurisdiction over the unions' action. GTW argues that the district court thus had no authority to "interpret" the NMB decision, and should have dismissed the case. The unions, on the other hand, assert that there was no jurisdictional bar to the district court deciding the issues presented in their amended complaint. They contend that the NMB had exhausted its "limited statutory jurisdiction" and a court order was required to gain GTW's compliance with the agency's decision.

### A.

We agree with GTW. The RLA, § 2 Ninth clearly gives the NMB exclusive jurisdiction over "[d]isputes as to the iden-

tity of representatives." The statute requires the NMB to investigate such disputes and "to certify to both parties, in writing within thirty days ... the name or names of the individuals or organizations that have been designated and authorized to represent the employees involved in the dispute, and certify the same to the carrier." It provides further that the carrier "shall treat with the representative so certified as the representative of the craft or class for the purposes of this chapter." 45 U.S.C. § 152 Ninth.

The language of the statute supports the arguments of both sides. The first certification to be made "to both parties," refers to *"individuals* or *organizations,"* indicating that the unions may designate and authorize more than one representative for the employees involved in the dispute. The second certification requirement uses the singular, however, and requires the carrier to treat with the *representative* so certified as the representative of the craft or class. Because of the statute's shifting from the plural to the singular it could be argued that although the unions are permitted to designate more than one representative, the carrier is required to treat with only one representative for each craft or class.

The proper procedure was for the parties, or at least one of them, to return to the NMB for a clarification of its decision. This is so because a district court has no power to review an action of the Board in issuing a certificate under § 2 Ninth. *Switchmen's Union of North America v. National Mediation Board*, 320 U.S. 297, 300, 64 S.Ct. 95, 96–97, 88 L.Ed. 61 (1943). In *Switchmen's Union*, Justice Douglas stated that a representation dispute "was to reach its last terminal point when the administrative finding was made." *Id.* at 305, 64 S.Ct. at 99. Under the Act, there was to be "no dragging out of the controversy into other tribunals of law." *Id.* See also, *Brotherhood of Railway & Steamship Clerks, Freight Handlers, Express & Station Employees v. Association for the Benefit of Non–Contract Employees*, 380 U.S. 650, 85 S.Ct. 1192, 14 L.Ed.2d 133 (1965), where the Court reviewed

*Switchmen's Union* and other decisions under § 2 Ninth and concluded. that Congress had denied judicial review over the NMB's selection of a form of ballot to be used in resolving a representation dispute.

The Court of Appeals ·for the District of Columbia has noted the "[j]udicial review of NMB decisions is extraordinarily limited." *Professional Cabin Crew Ass'n v. National Mediation Board*, 872 F.2d 456, 459 (D.C.Cir.), *cert. denied*, 493 U.S. 974, 110 S.Ct. 497, 107 L.Ed.2d 500 (1989). We agree with that court's conclusion that judicial review of NMB decisions is permitted "only upon a 'showing on the face of the pleadings that the certification decision was a gross violation of the [RLA] or that it violated the constitutional rights of an employer, employee, or union.' " *Id.* (quoting *International Ass'n of Machinists v. Trans World Airlines*, 839 F.2d 809, 811 (D.C.Cir.), *cert. denied*, 488 U.S. 820, 109 S.Ct. 62, 102 L.Ed.2d 40 (1988)). A court should take only a "peek at the merits" to determine whether the NMB has committed error of that magnitude; if the "peek" discloses no such error, the case should be dismissed. *Id.* (citations omitted). Nothing on the face of the pleadings or exhibits in this case indicated such error.

### B.

Although we must reverse the judgment, we believe the district court was led into error by the way in which the parties presented the case. In the district court, GTW appeared to be defying the Board by insisting that only one "spokesperson" could represent each class and craft employed in the merged carrier. GTW appeared to be claiming that once the old DT & I and DTSL certifications were extinguished by the merger, as the NMB held they were, it was required to deal only with the appropriate GTW committee as representative of each craft or class. The unions have attempted to argue that a distinction exists between representation *disputes*, over which the NMB has exclusive jurisdiction, and representation *issues*, over which it does not have plenary jurisdiction.

On appeal, both in its brief and at oral argument, GTW assured this court that it was not seeking the certification of "specific spokespersons." Rather, GTW argued, its purpose in initiating the NMB proceedings was to avoid the "fragmentation" that resulted from having the general chairmen who were formerly certified as DT & I and DTSL representatives continuing to present claims and grievances for employees of those railroads following the merger. All claims and grievances should be submitted by the unions' chosen representatives on a system-wide basis without distinctions as to an employee's pre-merger employer. The number and identity of representatives was immaterial so long as there was a single union acting as representative for each craft or class of employees.

If GTW had taken this position in the district court, it is likely that Judge Cook would have recognized that the action did not present a justiciable issue. This fact is even more certain now, because the NMB has issued a clarifying decision, which came after the district court had filed its opinion and judgment.

### C.

On August 1, 1991, GTW requested the NMB to clarify its decision of June 18, 1990. After the parties had submitted briefs, the NMB heard oral arguments on the petition for clarification on November 15, 1991. It issued a clarifying opinion on March 10, 1992. 19 *NMB* 226 (1992). The parties advised this court at oral argument that a clarifying opinion would be forthcoming, and the panel determined informally to await release of that opinion before deciding this appeal.

In its clarifying opinion, the NMB stated that it was "absolutely clear from the history of these proceedings [that] the critical issue in dispute is the scope of representation of the system-wide 'representatives' of the crafts or classes." 19 *NMB* at 229. This is the kind of question, the NMB held, which is within the exclusive jurisdiction of the Board. The opinion states that railroad mergers engender continuing representa-

tion issues that create an instability which the Act seeks to avoid. The remedy for this instability is achieved through application of the Board's merger procedures. Under those procedures the Board has consistently held that such representation must be on a system-wide basis. Further, "[a] single representative for the system-wide craft or class is meant to facilitate collective bargaining and provide labor-management stability."

With this background the Board discussed and clarified its earlier decision:

In the present case, the Board found that a single transportation system existed on the GTW, and as a result, representation rights on the former lines were extinguished. The Board envisioned that the Carrier and labor organizations would not continue to bargain along the lines of the extinguished certifications of the former lines.

In its previous decisions in this case, the Board has redefined the representation structure for collective bargaining on the GTW property. What the Board clarifies through this decision is that when the Board found a labor organization to be the representative for a craft or class of employees on the GTW, the Board meant that the labor organization is the single representative for the entire system-wide craft or class on the GTW in order to enable bargaining to proceed along the newly-defined craft or class lines.

*Id.* at 232–33 (footnote omitted).

## CONCLUSION

Although the parties disagree as to the impact of the Board's clarifying opinion, we conclude that the Board correctly determined that the matter presented to it in this case was a representation dispute, exclusively within its jurisdiction. Thus, the district court lacked subject matter jurisdiction to review the Board's decision. Fortunately, GTW has abandoned its attempt to have the NMB identify specific spokespersons as representatives for each craft or class of workers and accepted the Board's refusal to do so. The Board has certified the union that is the single representative for each craft or class of workers system-wide on the GTW, and thus has resolved the only dispute.

The judgment of the district court is reversed and the case is remanded with directions to dismiss it with prejudice. Each party will bear its own costs on this appeal.