Filed 7/15/24  Internat. Assn. of Sheet Metal etc. Workers v. Cal. Public Employment etc. Bd. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| INTERNATIONAL ASSOCIATION OF SHEET METAL, AIR, RAIL AND TRANSPORTATION WORKERS,<br><br>Petitioner,<br><br>v.<br><br>CALIFORNIA PUBLIC EMPLOYMENT RELATIONS BOARD,<br><br>Respondent;<br><br>NORTH COUNTY TRANSIT DISTRICT et al.,<br><br>Real Parties in Interest. | D083813<br><br>(State Mediation and Conciliation Service No. 23-3-226) |

ORIGINAL PROCEEDING in mandate challenging an order of the California State Mediation and Conciliation Service, a division of the California Public Employment Relations Board.  Petition denied.

McCracken, Stemerman & Holsberry and Paul L. More for Petitioner.

J. Felix De La Torre, Mary Weiss, Joseph W. Eckhart, and Ronald R. Pearson for Respondent.

Thompson Coburn, Lukas Sosnicki; and Lori A. Winfree for Real Party in Interest North County Transit District.

No appearance for Real Party in Interest Terry S. Johnson.

The International Association of Sheet Metal, Air, Rail and Transportation Workers (SMART Union) seeks extraordinary writ relief to halt pending proceedings before the California Public Employment Relations Board (PERB) on a petition and election to decertify SMART Union as the collective bargaining representative for train engineers and conductors employed by North County Transit District (NCTD) to operate its Coaster commuter rail system. SMART Union contends that the federal National Mediation Board has exclusive jurisdiction over the representation dispute. We disagree and deny the requested writ relief.

## FACTUAL AND PROCEDURAL BACKGROUND

NCTD is a public transit district established by state law. (Pub. Util. Code, § 125000, et seq.) It has authority to plan, construct, and operate public transit systems within its jurisdiction. (Pub. Util. Code, § 125260.) NCTD established and developed the Coaster commuter rail service in San Diego and owns the assets of its system. The tracks on which the Coaster operates are also used by private freight carriers and by Amtrak and Metrolink, another commuter rail operator.

Before June 2022, NCTD contracted with private companies to operate the Coaster. In 2016, the National Labor Relations Board certified SMART Union as the representative for a bargaining unit of engineers and conductors employed by a private company to operate the Coaster.

In June 2022, NCTD took over direct control of the Coaster's operations and hired all members of the bargaining unit previously employed by the

2

private operator. NCTD and SMART Union began negotiations for a new collective bargaining agreement.

In November 2023, a group of engineers and conductors employed by NCTD filed a petition to decertify SMART Union as their representative. The petition was filed with the State Mediation and Conciliation Service, a division of PERB.[1] Initially, all interested parties, including SMART Union, authorized PERB to proceed with the decertification election according to an agreed schedule for voting and counting ballots.

On January 22, 2024, four days before the deadline for voters to return their mail ballots, SMART Union submitted a motion to dismiss asserting that PERB lacked jurisdiction over the decertification petition. SMART Union argued that federal law preempts PERB's jurisdiction because the National Mediation Board has exclusive jurisdiction over representation disputes involving rail carriers subject to the Railway Labor Act (45 U.S.C. § 151, et seq.). Accordingly, SMART Union requested that PERB immediately cease conducting the election and dismiss the decertification petition.

On the last day for returning ballots, PERB determined that SMART Union had raised a legitimate question as to its jurisdiction. Accordingly, it impounded the ballots received and cancelled the scheduled ballot count pending a determination on its jurisdiction to conduct the election.

In February 2024, PERB issued an order to show cause why SMART Union's request for dismissal should not be denied and the ballot count should not proceed. PERB noted that it had jurisdiction over the decertification election under Public Utilities Code section 125521 and

---

[1] For simplicity, we refer to PERB and its State Mediation and Conciliation Service interchangeably as PERB.

implementing regulations.[2]  It further noted that the California Constitution states an administrative agency may not "refuse to enforce a statute on the basis that federal law or federal regulations prohibit the enforcement of such statute unless an appellate court has made a determination that the enforcement of such statute is prohibited by federal law or federal regulations."  (Cal. Const., art. 3, § 3.5(c).)  PERB expressed its view that "the California Constitution prohibits [PERB] from refusing to enforce PUC section 125521" because "[t]here is no appellate decision holding that the enforcement of PUC section 125521 is prohibited by federal law or federal regulations."

In response to PERB's order to show cause, NCTD took no position on the issue.  The NCTD employees seeking decertification argued that the election and ballot count should proceed.

On March 7, 2024, PERB denied SMART Union's request to dismiss the decertification petition and decided to proceed with the election.  PERB reaffirmed its position that article 3, section 3.5 of the California Constitution required it to enforce Public Utilities Code section 125521 unless and until an appellate court determined that such enforcement was prohibited.

SMART Union then filed its writ petition with this court challenging PERB's administrative determination of March 7, 2024 and arguing that the National Mediation Board has exclusive jurisdiction over the representation dispute.  SMART Union also filed an administrative appeal of PERB's

---

2    Public Utilities Code section 125521 is part of the North County Transit District Act.  (Pub. Util. Code, § 125000, et seq.)  It gives PERB authority to resolve representation questions involving NCTD employees and provides that the State Mediation and Conciliation Service shall conduct elections to determine the question of representation and certify the results.  (Pub. Util. Code, § 125521.)

4

decision with the PERB board.  The PERB board granted SMART Union's request for a stay and halted all related PERB proceedings, including the tally of ballots.

In its informal response to SMART Union's writ petition, PERB initially conceded "that NCTD employees working on the Coaster may be subject to the Railway Labor Act."  NCTD submitted an informal response stating that it took no position on the matter.

After issuing an order to show cause, we issued another order noting that under title 45 United States Code section 151, the Railway Labor Act only applies to railroads subject to the jurisdiction of the Surface Transportation Board (STB), a federal agency charged with regulating various modes of surface transportation, primarily freight rail.  We requested that the parties address the applicability of the public transportation exception to STB's jurisdiction, which provides that STB has no jurisdiction over "public transportation provided by a local government authority."  (49 U.S.C. § 10501(c)(2)(A).)

In its return, PERB explained that although it "initially found plausible" SMART Union's preemption argument, it had reconsidered its position based on our order directing the parties' attention to the public transportation exception.  PERB asserted that the public transportation exception to STB's jurisdiction applies here because NCTD is a local government authority that provides public transportation through the Coaster commuter rail system.  For its part, NCTD continued to take a neutral position but acknowledged that it is a local government authority providing public transportation within the meaning of the public transportation exception.  In its reply, SMART Union also conceded that "NCTD is a local governmental authority and that the COASTER is a public

transportation service," but argued that this made no difference to the federal preemption question.

While this petition was pending, a rival of SMART Union, the Brotherhood of Locomotive Trainmen and Engineers, submitted a letter to the National Mediation Board alleging a representation dispute involving the same group of Coaster employees currently represented by SMART Union. SMART Union in turn filed a position statement confirming that it represented these employees and arguing (consistently with its position here) that NCTD is subject to jurisdiction under the Railway Labor Act.

On June 11, 2024, the National Mediation Board issued an order concluding that NCTD and its Coaster train and engine service employees are subject to its jurisdiction under the Railway Labor Act. (*In the Matter of the Application of the Brotherhood of Locomotive Trainmen and Engineers Alleging a Representation Dispute Pursuant to Section 2, Ninth, of the Railway Labor Act, As Amended Involving Employees of North County Transit District* (June 11, 2024) 51 NMB No. 16 (2024 NMB Decision). Accordingly, it scheduled an election for eligible employees to choose between the two unions. The election was scheduled for June 27 through July 31, 2024.

## DISCUSSION

The sole issue before us is whether the National Mediation Board has exclusive jurisdiction over the representation dispute involving Coaster train engineers and conductors employed by NCTD.[3] We will begin by discussing the relevant federal statutory provisions and agency decisions.

---

[3] The parties do not dispute that we should decide this issue on the merits notwithstanding SMART Union's failure to exhaust its administrative remedies. We agree. A party's failure to exhaust administrative remedies

6

A. *Federal Statutory Provisions*

The National Mediation Board has exclusive jurisdiction of representation disputes involving rail carriers subject to the Railway Labor Act. (45 U.S.C. § 152 [ninth provision]; *Switchmen's Union of North America v. National Mediation Bd.* (1943) 320 U.S. 297, 303.) The Railway Labor Act applies to "any railroad subject to the jurisdiction of the [STB]." (45 U.S.C. § 151.) To determine whether the National Mediation Board has jurisdiction over this representation dispute, we must therefore decide whether NCTD is subject to the jurisdiction of STB in its operation of the Coaster commuter rail service.

Congress created STB in 1995, when it enacted the Interstate Commerce Commission Termination Act (ICCTA). The ICCTA abolished the Interstate Commerce Commission and transferred authority for railroad regulation to the newly created STB, effective January 1, 1996. (Pub.L. No. 104-88 (Dec. 29, 1995) 109 Stat. 803.)

Under the ICCTA, STB generally has jurisdiction over intrastate "transportation by rail carrier" that occurs as part of the interstate rail network. (49 U.S.C. § 10501(a)(1), (a)(2)(A).) The term "rail carrier" means "a person providing common carrier railroad transportation for compensation, but does not include street, suburban, or interurban electric railways not operated as part of the general system of rail transportation." (49 U.S.C.

---

may be excused when the agency lacks authority to resolve the underlying dispute. (*Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1081–1082.) As PERB notes, the California Constitution prohibits it from refusing to enforce Public Utilities Code section 125521 unless an appellate court determines that such enforcement is prohibited by federal law. (Cal. Const., art. 3, § 3.5.) Accordingly, PERB lacks authority to decide whether federal law precludes it from conducting the decertification election as required by California law.

§ 10102(5).)  The term "transportation" includes a locomotive or any property, facility, instrumentality or equipment related to the movement of passengers or property by rail.  (49 U.S.C. § 10102(9).)  STB's jurisdiction is exclusive and preempts other remedies provided under federal or state law.  (49 U.S.C. § 10501(b).)

STB's jurisdiction, however, is subject to a public transportation exception.  This exception states that STB has no jurisdiction over "public transportation provided by a local government authority."[4]  (49 U.S.C. § 10501(c)(2)(A).)  The term "local governmental authority" is defined to have "the same meaning given that term by section 5302 of this title" (49 U.S.C. § 10501(c)(1)A)(i)), which includes "a public corporation, board, or commission established under the laws of a State."  (49 U.S.C. § 5302(11).)  With certain exceptions not applicable here, the term "public transportation" means "regular, continuing shared-ride surface transportation services that are open to the general public or open to a segment of the general public defined by age, disability, or low income."  (49 U.S.C. § 5302(15).)  Congress also enacted a narrow exception to the public transportation exception, which gives STB limited jurisdiction to authorize a public transportation authority's joint use of terminal facilities, switch connections, and tracks under title 49 United States Code sections 11102 and 11103.  (49 U.S.C. § 10501(c)(3)(B).)

In enacting the ICCTA, Congress expanded a previously existing mass transportation exemption to the Interstate Commerce Commission's

---

[4]    As originally enacted, the statute referred to "mass transportation" rather than "public transportation."  In 2015, Congress changed the language to "public transportation."  (Fixing America's Surface Transportation Act, Pub.L. No. 114-94, Div. A, Title III, § 3030(g) (Dec. 4, 2015) 129 Stat. 1497.) For this reason, the public transportation exception has often been referred to as the mass transportation exception.

8

jurisdiction, which applied only if the carrier's fares were subject to the approval of the state's governor. (Former 49 U.S.C. § 10504(b).) The ICCTA's public transportation exception contains no such limitation. (49 U.S.C. § 10501(c)(2)(A).) As explained in the House of Representatives conference report on the new ICCTA provision: "The exclusive nature of the [Surface Transportation] Board's regulatory authority would be clarified. The Board's rail jurisdiction would be limited to freight transportation, because rail passenger transportation today (other than service by Amtrak, which is not regulated under the Interstate Commerce Act) is now purely local or regional in nature and should be regulated (if at all) at that level. . . . [¶] This provision . . . changes the statement of agency jurisdiction to reflect curtailment of regulatory jurisdiction in areas such as passenger transportation. . . . This section . . . clarifies that, although regulation of passenger transportation is generally eliminated, public transportation authorities that meet the existing criteria for being rail carriers may invoke the terminal area and reciprocal switching access remedies of section 11102 and 11103." (H.R.Rep. No. 104-422, 104th Cong., 1st Sess., p. 167 (1995).)

B. *STB's Application of the Public Transportation Exception*

As noted, the National Mediation Board has exclusive jurisdiction over this representation dispute only if NCTD is subject to the jurisdiction of STB in its operation of the Coaster commuter rail service. (45 U.S.C. §§ 151, 152 [ninth provision].) To assist us in analyzing this question, we turn to STB decisions applying the public transportation exception.

In the three decades since passage of the ICCTA, STB has consistently recognized that "Congress intended to specifically exclude 'commuter passenger service' from this agency's jurisdiction." (*New Jersey Association of Railroad Passengers and National Association of Railroad Passengers—*

9

*Petition for Declaratory Order—Princeton Branch* (S.T.B. July 24, 2014) 2014 WL 3697533 at *4; *Ibid.* [public commuter rail service "not subject to the Board's jurisdiction"]; see also *Peninsula Corridor Joint Powers Board— Petition for Declaratory Order* (S.T.B. July 2, 2015) 2015 WL 4065035 at *2 (*Peninsula Corridor*) [public commuter rail service "excluded from Board jurisdiction"]; *Transit Solutions Group, LLC—Operation Exemption— Nashville and Eastern Railroad* (S.T.B. March 2, 2006) 2006 WL 560758 at *1–*2 [public commuter rail service "not subject to the Board's jurisdiction"]; *Massachusetts Bay Commuter Railroad Company, LLC—Petition for Declaratory Order* (S.T.B. June 4, 2003) 2003 WL 21359920, at *2 [public commuter rail carrier "excepted from Board jurisdiction"]; see also *CSX Corp. & CSX Transp., Inc., Norfolk S. Corp. & Norfolk S. Ry. Co.—Control & Operating Leases/agreements—Conrail Inc. & Consol. Rail Corp.* (1998) 3 S.T.B. 196, 1998 WL 456510, at *62, fn. 156 ["our jurisdiction over mass transportation provided by a local governmental authority is limited to authorizing joint use of terminal facilities, switch connections, and tracks under 49 U.S.C. 11102 and 11103"].)

STB has concluded that it lacks jurisdiction over public commuter rail services even when the operator owns and shares the use of its railroad line with a freight service. In *Peninsula Corridor*, for example, a state agency (Caltrain) and local agency jointly acquired a rail line to conduct a commuter rail service. (*Peninsula Corridor, supra*, 2015 WL 4065035, at p. *1.) In addition to operating the commuter service, they granted trackage rights to Union Pacific Railroad Company to operate freight service on the same line. (*Ibid.*) STB nevertheless concluded that it lacked jurisdiction over a proposed project to electrify the line. It explained: "Caltrain provides only commuter rail service on the line, including equipment and facilities used exclusively for

10

its commuter rail service, and operations of this sort are excluded from [STB] jurisdiction." (*Id*. at p. *2.)  STB further noted "it appears that the Project is intended only to benefit Caltrain's commuter operations" and "[n]othing in the record indicates that the Project is for the benefit of, or would unreasonably interfere with, non-Caltrain rail operations on the line that are subject to the [STB]'s jurisdiction." (*Id*. at p. *3.)

  C. *Interstate Commerce Commission's and STB's Exercise of Jurisdiction Over NCTD*

  Although STB has consistently declined to exercise jurisdiction over public commuter rail systems based on the public transportation exception, STB and its predecessor (the Interstate Commerce Commission) have nevertheless exercised jurisdiction over NCTD in several circumstances.  We set forth the relevant history here.

  In 1994, the year before it was abolished, the Interstate Commerce Commission determined that the NCTD's and other transit agencies' initial purchase of the tracks from a freight railroad was subject to its jurisdiction. (*Orange County Transportation Authority, et al.—Acquisition Exemption—The Atchison, Topeka and Santa Fe Railway Co.* (I.C.C. March 28, 1994) 10 I.C.C.2d 78, 90–91, 1994 WL 114003, at *7–*8 (1994 ICC Decision).)  The Interstate Commerce Commission reasoned that when the transit agencies purchased the tracks and granted the seller a permanent easement to continue conducting freight operations, they maintained sufficient control over the freight operations to be deemed a common carrier.  Specifically, the restrictions they imposed to accommodate commuter service operated as a substantial impairment of the freight railroad's operations. (*Ibid*.)

  In 1997, STB granted an application by NCTD and other transit agencies for a blanket exemption from the rail carrier requirements of title 49

11

United States Code Subtitle IV. (*Orange County Transportation Authority, et al. Acquisition Exemption the Atchison, Topeka and Santa Fe Railway Company* (S.T.B. Feb. 28, 1997) 1997 WL 106979 (1997 STB Decision).) In doing so, STB explained: "When the [Interstate Commerce Commission] designated these Transit Agencies to be 'rail carriers' in the first place, its only reason for doing so was to assure that they did not unduly interfere with the provision of common carrier freight service by carriers such as Santa Fe that were selling their underlying rights-of-way without eliminating their common carrier obligation to provide service over them. The [Interstate Commerce Commission] never intended that these agencies be subjected to the full panoply of carrier obligations under the Interstate Commerce Act (Act). Because the Transit Agencies are not going to be operating as rail freight common carriers and do not hold themselves out to provide service over those lines, it makes no sense to subject them to the various requirements of the Act relating to freight service. . . . [T]he transaction or 'service' that is being exempted is extremely limited in scope. Indeed, the Transit Agencies are providing no 'service' that we regulate; they have merely been given the obligation not to <u>interfere</u> unduly with the provision of rail freight service by the carrier that retains the obligation to do so. The Transit Agencies will continue to have that obligation." (*Id.* at p. *2.)

In 2002, STB decided that it had jurisdiction to determine whether the City of Encinitas was prohibited from requiring NCTD to obtain a permit or other approval to construct a passing track to improve both freight and passenger service on its line. (*North San Diego County Transit Development Board—Petition for Declaratory Order* (S.T.B. Aug. 19, 2002) 2002 WL 1924265 (2002 STB Decision).) STB agreed with a federal district court decision holding that NCTD was both a commuter rail operator and a rail

12

carrier subject to STB's jurisdiction, and that the Encinitas permit requirements for the passing track were preempted under title 49 United States Code section 10501(b). (2002 STB Decision, at p. *4, citing *City of Encinitas v. North San Diego County Transit Development Board* (S.D. Cal. Jan. 24, 2002) 2002 WL 34681621, at *4–*6 (*City of Encinitas*).) STB reasoned that "the passing track will benefit freight operations in addition to mass transportation operations." (2002 STB Decision, at p. *4.) "Because of this benefit to BNSF's common carrier interstate rail freight operations, there is no doubt that we have jurisdiction and that this case falls within section 10501(b)." (*Ibid.*)

In 2023, STB declined to issue a declaratory order regarding the applicability of certain state and local laws and regulations to a proposed bluff stabilization project by NCTD. (*North County Transit District – Petition for Declaratory Order* (S.T.B. May 22, 2023) 2023 WL 3611764.) In its decision, STB referred to NCTD as "a California state agency responsible for providing public transit in north San Diego County and a common carrier subject to the Board's jurisdiction . . . ." (*Id.* at p. *1.) In a footnote, STB explained: "The Interstate Commerce Commission, the Board's predecessor, determined [in 1994] that NCTD is a common carrier because when it purchased the line from the Atchison, Topeka and Santa Fe Railway Company (Santa Fe), it granted a permanent easement to Santa Fe to conduct freight operations but maintained sufficient control over those freight operations to be deemed a common carrier. [Citation.] The successor of Santa Fe, BNSF Railway Company (BNSF), continues to operate over the line owned by NCTD." (*Id.* at p. *1, fn. 2.)

13

D. *National Mediation Board Decision*

As noted, while this petition was pending, the National Mediation Board decided essentially the same jurisdictional question now before us. Specifically, it concluded that NCTD and its Coaster train and engine service employees are subject to jurisdiction under the Railway Labor Act. Accordingly, the National Mediation Board scheduled another election for eligible employees to choose between the two rival unions. (2024 NMB Decision*, supra*, 51 NMB No. 16.)

In reaching this decision, the National Mediation Board first noted that a carrier is subject to jurisdiction under the Railway Labor Act if it is a " 'railroad subject to the jurisdiction of the [STB]' " within the meaning of title 45 United States Code section 151. (2024 NMB Decision*, supra*, 51 NMB No. 16, at p. 83.) It concluded that NCTD is subject to the jurisdiction of STB for three main reasons. First, citing the Interstate Commerce Commission's 1994 decision regarding NCTD's purchase of the tracks and STB's 2002 decision regarding the proposed Encinitas passing track, the National Mediation Board concluded that "[t]he STB, and before it the Interstate Commerce Commission (ICC), have exercised jurisdiction over the NCTD." (*Id.* at pp. 83–84.) Second, citing the federal district court's 2002 decision in *City of Encinitas*, the National Mediation Board concluded that "NCTD's status as a public transit agency does not preclude STB coverage" because it is both a commuter rail operator and a rail carrier subject to STB jurisdiction. (*Id.* at p. 84, citing *City of Encinitas, supra*, 2002 WL 34681621, at p. *4.) Finally, citing a 1982 decision of the United States Supreme Court, the National Mediation Board concluded that "NCTD's status as a public employer also does not preclude RLA jurisdiction." (*Ibid.*, citing *United*

14

*Transportation Union v. Long Island R.R. Co.* (1982) 455 U.S. 678, 686 (*United Transportation Union*).)

E. *Standard of Review*

We must now decide whether we agree with the National Mediation Board that it has jurisdiction over the representation dispute because NCTD is a "railroad subject to the jurisdiction of the [STB]" even in its operation of the Coaster commuter rail system. (45 U.S.C. § 151.) If so, the state PERB decertification proceedings cannot proceed because the National Mediation Board has exclusive jurisdiction over such representation disputes. (*Brotherhood of Maintenance of Way Employees v. Grand T. W. R. Co.* (6th Cir. 1992) 961 F.2d 1245, 1248.) If not, the PERB proceedings may continue.

We review this issue independently as a question of law based on undisputed facts. In exercising our independent review, we must consider what if any deference to give to the National Mediation Board's determination of its own jurisdiction. Courts normally give some level of deference to an agency's interpretation of a statute within its jurisdiction. (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 11–12 (*Yamaha*).) But this general rule of deference does not apply when the issue is the scope of the agency's own jurisdiction. (*BullsEye Telecom, Inc. v. Public Utilities Com.* (2021) 66 Cal.App.5th 301, 309; *PG&E Corp. v. Public Utilities Com.* (2004) 118 Cal.App.4th 1174, 1194.)

Even when the *Yamaha* rule of deference does apply, the degree of deference owed is "fundamentally *situational*" and depends on two groups of factors: (1) those concerned with whether the agency has a comparative advantage over courts in deciding the matter; and (2) those indicating that the agency's interpretation is probably correct. (*Yamaha, supra,* 19 Cal.4th at p. 12.) " 'The weight of such a judgment in a particular case,' to

15

borrow . . . from Justice Jackson's opinion in *Skidmore* [*v. Swift & Co.* (1944) 323 U.S. 134, 140 (*Skidmore*)], 'will depend upon *the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those facts which give it power to persuade, if lacking power to control.*' " (*Yamaha*, at pp. 14–15.)  We address these *Yamaha* factors below in our analysis of the National Mediation Board's decision.[5]

F. *Analysis*

Based on the public transportation exception, we ultimately conclude that NCTD is not subject to STB's jurisdiction for matters solely affecting its operation of the Coaster commuter rail service.  NCTD is a public transit district created by state statute and governed by a board of directors.  (Pub. Util. Code, § 125050.)  Its mandate is to plan, construct, and operate public transit systems within San Diego County.  (Pub. Util. Code, §§ 125052, 125260.)  NCTD operates the Coaster as a commuter rail system for the fare-paying public.  NCTD therefore meets the definition of a "local governmental authority" providing "public transportation" services.  (49 U.S.C. §§ 5302(11)

---

[5]    Until the United States Supreme Court recently overruled *Chevron U.S.A., Inc. v. Natural Resources Defense Council* (1984) 467 U.S. 837, we may have been required to give *Chevron* deference to the National Mediation Board's determination of its own jurisdiction.  (See *City of Arlington v. FCC* (2013) 569 U.S. 290 [court must give *Chevron* deference to agency's interpretation of statutory ambiguity concerning its own jurisdiction].)  But *Chevron* has now been overruled.  (*Loper Bright Enterprises v. Raimondo* (June 28, 2024, No. 22-1219) ___ U.S. ___, ___ [2024 WL 3208360, at *22].)  Under *Raimondo*, courts no longer owe *Chevron* deference to a federal agency's interpretation of an ambiguous statute.  The analytic framework in *Yamaha*, however, draws heavily from the United States Supreme Court's decision in *Skidmore*, which has not been overruled and establishes a lower level of deference, depending on the circumstances.  (*Yamaha, supra*, 19 Cal.4th at pp. 11–15.)

& (15).)  Consequently, NCTD's operation of the Coaster falls within the public transportation exception to STB's jurisdiction.  (49 U.S.C. § 10501(c)(2)(A).)  As we have discussed, the text and legislative history of the ICCTA reflect that in enacting this exception, Congress intended to allow greater local control of publicly operated commuter rail systems.[6]

We recognize that the Interstate Commerce Commission and STB have exercised jurisdiction over NCTD in certain circumstances—but they have done so only when necessary to prevent interference with freight operations over which they have jurisdiction.  As STB recognized when it granted NCTD a blanket exemption from ICCTA's rail carrier requirements in 1997, the Interstate Commerce Commission's 1994 decision assuming jurisdiction over the initial sale of the tracks to NCTD and other transit authorities (before the enactment of the public transportation exception) was explicitly based on their continued control over freight operations by means of restrictions to accommodate commuter rail service.  (1997 STB Decision, *supra*, 1997 WL 106979, at p. *2; 1994 ICC Decision, *supra*, 1994 WL 114003, at pp. *7–*8.)  Likewise, STB's 2002 decision assuming jurisdiction over the NCTD's

---

[6]     SMART Union cites a provision immediately following the public transportation exception, which states: "Notwithstanding paragraph 2 of this subsection [the public transportation exception], a local governmental authority, described in paragraph (2) is subject to applicable laws of the United States related to -- the representation of employees for collective bargaining."  (49 U.S.C. § 10501(c)(3)(A)(ii).)  This provision is not relevant here because it is a substantive law provision, rather than one defining the STB's jurisdiction.  The sole issue before us is whether NCTD is subject to STB's jurisdiction in its operation of the Coaster.  Notably, the Public Utilities Code separately requires PERB to apply "the relevant federal law and administrative practice developed under the Labor Management Relations Act, 1947, as amended" in resolving questions of representation involving NCTD employees.  (Pub. Util. Code, § 125521.)

17

proposed passing track in Encinitas was explicitly based on its benefit to freight operations sharing the same line. (2002 STB Decision, *supra*, 2002 WL 1924265, at p. *4.) The parties have not cited, nor have we discovered, any instance in which STB has exercised jurisdiction over NCTD's Coaster operations absent a potential impact on freight services sharing the same tracks.

STB's 2015 decision in the *Peninsula Corridor* case confirms that the agency will not exercise jurisdiction over the operations of a public commuter rail service unless there is some potential impact on freight operations sharing the same line. In fact, STB in *Peninsula Corridor* distinguished its own 2002 NCTD decision on exactly this basis. In finding that it lacked jurisdiction over the proposed plan to electrify a public commuter rail line, STB explained: "There is no indication that the Project would have potential impacts on [another private carrier]'s freight rail operations on the line. *Thus, this case differs from* [*the 2002 NCTD decision*]*, where the* [*STB*] *found that* [*section*] *10501(b)* [*of title 49 of the United States Code*] *preempted state and local permitting requirements applied to a commuter rail's construction of a passing track, because the permitting requirements at issue would affect freight rail operations as well as commuter rail operations.*" (*Peninsula Corridor, supra*, 2015 WL 4065035, at p. *3, italics added.) STB further explained that "mass transportation often takes place over lines subject to the [STB]'s jurisdiction and, in such situations, the [STB] does not have jurisdiction over the mass transportation services despite having jurisdiction over the line on which it runs." (*Id*. at p. *2.)

Like the electrification plan in *Peninsula Corridor*, we fail to see how the representation dispute in this case would affect freight operations on NCTD's tracks. The only question here is which union will represent

18

engineers and conductors who are employed by NCTD solely to operate the Coaster commuter rail system. There is no suggestion in the record that these employees are in any way involved in freight operations conducted by private entities sharing use of the same tracks. Whether these Coaster employees are represented by SMART Union or one of its rivals in collective bargaining with NCTD will itself have no impact on private carriers' freight operations.[7] Such disputes solely involving the employees of a public transportation system operated by a local government authority fall squarely within the public transportation exception and thus are not within STB's jurisdiction. (49 U.S.C. § 10501(c)(2)(A).) Congress intended to leave such matters to local control.

Assuming the *Yamaha* deference factors apply here—even though the issue involves the National Mediation Board's determination of its own jurisdiction—we would still conclude that deference to its decision is unwarranted. First, the National Mediation Board does not have any comparative interpretative advantage in deciding the controlling legal question whether NCTD is subject to STB's jurisdiction in its operation of the Coaster. (*Yamaha, supra*, 19 Cal.4th at p. 12.) This issue does not involve any technical or administrative expertise. Rather, it depends on a careful reading of the text, legislative history, and purpose of ICCTA's public transportation exception and relevant STB decisions applying the exception.

---

[7] SMART Union speculates that "a labor dispute among those of [NCTD's] employees who operate the COASTER could very well interfere with the free flow of freight traffic." But the issue before the court does not involve such a labor dispute; it only involves a representation dispute. We express no view as to whether a hypothetical future labor dispute somehow affecting freight traffic would be subject to STB's or the National Mediation Board's jurisdiction.

This is a classic judicial function. "Ultimately, any question regarding the proper interpretation of a statute is an exercise of judicial power for the courts. [Citations.] This is especially so where, as here, the agency in question has no particular interpretative advantage over the courts based on some expertise." (*Styrene Information & Research Center v. Office of Environmental Health Hazard Assessment* (2012) 210 Cal.App.4th 1082, 1100.)

Second, in a *Yamaha* deference analysis, we must consider factors "suggesting the agency's interpretation is likely to be correct," including indications of careful consideration by senior agency officials (such as an interpretation contained in a regulation after public notice and comment); evidence the agency has consistently maintained the interpretation in question, especially if it is longstanding; and indications that the agency's interpretation was contemporaneous with the enactment of the statute. (*Yamaha, supra*, 19 Cal.4th at pp. 12–13.) In this case, the National Mediation Board's decision to assume jurisdiction was made by the board members, but it was not contained in a regulation after public notice and comment; it was not based on a consistent and longstanding interpretation of the law; and it was not contemporaneous with the enactment of the statute. Moreover, the decision was not made after an adversarial presentation in which any party argued the contrary position that NCTD was not subject to STB's jurisdiction in its operation of the Coaster.

We must also consider the "thoroughness" of the agency's review and "the validity of its reasoning." (*Yamaha, supra*, 19 Cal.4th at pp. 14–15, italics omitted.) The substance of the National Mediation Board's decision suggests that it did not thoroughly consider the issue—perhaps because no party presented any opposing argument. First and foremost, it did not cite or

20

discuss either the public transportation exception or STB's decisions declining to exercise jurisdiction over public commuter rail carriers based on this exception. Second, it failed to recognize that STB has exercised jurisdiction over NCTD only when it has perceived a potential impact on freight operations sharing the tracks. Third, it relied on a 1982 United States Supreme Court decision predating ICCTA's enactment of the public transportation exception by 13 years. (See *United Transportation Union, supra*, 455 U.S. 678.) This case merely held that it did not violate the Tenth Amendment of the United States Constitution to apply the Railway Labor Act to a state-owned railroad providing both freight and passenger service. (*Id*. at pp. 680–690.) It does not shed any light on the applicability of the public transportation exception to STB's jurisdiction.

Finally, the National Mediation Board relied on the district court's statement in *City of Encinitas* that NCTD is both a commuter rail operator and a rail carrier owning and operating an interstate rail line subject to STB's jurisdiction. (*City of Encinitas, supra*, 2002 WL 34681621, at p. *4.) But this observation does not resolve the question whether NCTD is subject to STB's jurisdiction for matters solely affecting its operations as a commuter rail carrier. Even when a local government entity qualifies as a rail carrier otherwise subject to STB's jurisdiction, the public transportation exception explicitly states that STB "does not have jurisdiction" over "public transportation provided by" the entity. (49 U.S.C. § 10501(c)(2)(A).)

As STB has explained, the "only reason" the Interstate Commerce Commission designated NCTD as a rail carrier in 1994 was "to assure that [it] did] not unduly interfere with the provision of common carrier freight service" using the same tracks. (1997 STB Decision*, supra*, 1997 WL 106979, at p. *2.) According to STB, NCTD and other similar transit agencies "are

21

providing no 'service' that we regulate; they have merely been given the obligation not to <u>interfere</u> unduly with the provision of rail freight service by the carrier that retains the obligation to do so." (*Ibid*.)  This confirms what the statute and STB's decisions otherwise suggest—that STB has no jurisdiction over NCTD's commuter rail service so long as it has no potential impact on rail freight service.

This result is also consistent with the decision in *City of Encinitas*.  The district court there explicitly noted that NCTD's proposed passing track *would* affect freight operations.  (See *City of Encinitas, supra*, 2002 WL 34681621, at p. *1 [stating that purpose of proposed passing track was to " 'improve and upgrade the provision of interstate freight and passenger service on this line' "].)  In fact, as we have noted, STB later exercised jurisdiction over the matter for this very reason.  (2002 STB Decision*, supra*, 2002 WL 1924265, at p. *4 [finding "no doubt that we have jurisdiction" because "the passing track will benefit freight operations in addition to mass transportation operations"].)

Accordingly, we hold that NCTD is not subject to STB's jurisdiction for matters solely affecting its operation of the Coaster commuter rail service. STB lacks jurisdiction over such matters under the public transportation exception.  (49 U.S.C. § 10501(c)(2)(A).)  Moreover, the decertification or election of a union to represent Coaster engineers and conductors in collective bargaining with NCTD will not itself have any impact on freight operations. The National Mediation Board therefore has no jurisdiction over this matter, and the PERB proceedings on the petition to decertify SMART Union may continue under Public Utilities Code section 125521 and other applicable provisions of state law.

22

## DISPOSITION

The petition is denied.  In the interests of justice, the parties shall bear their own costs.

BUCHANAN, Acting P. J.

WE CONCUR:

KELETY, J.

RUBIN, J.